[Crim. No. 4091.  First Dist., Div. Three.  Mar. 6, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM ALFORD CARRIGAN et al., Defendants and Appellants.

Malcolm Burnstein and Richard C. Lewis, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, and John S. McInerny, Robert R. Granucci and Michael Traynor, Deputy Attorneys General, for Plaintiff and Respondent.

DRAPER, P. J.—A jury found each of two defendant brothers guilty of two counts of burglary.  Each appeals from the ensuing judgment, and we appointed attorneys to represent them separately.

At about 4 a.m., the Villa Roma bar in San Jose was entered by forcing a fiberboard panel.  Inside the establishment, two office doors had been pried open and marks of a screwdriver

and pry bar were left thereon. One of the doors was so constructed that its opening triggered a burglar alarm. Nothing was taken from this bar. In the early hours of the same morning, the Hat's Club, another San Jose bar, was forcibly entered. Some $150 in currency and rolled coins was taken. A jukebox and a cigarette machine were broken open, and $87 to $97 in coins removed. It was the custom of the management to keep the jukebox playing through slack hours. Half dollars and quarter dollars deposited in the coin slot for this purpose were marked with red nail polish, so that the company which owned the machine could return them to the bar owner when collections were made.

At about 1:30 a.m. the two defendants and a third man had been in the Villa Roma. The bartender recognized the defendants as men who had been in the bar on the night of a burglary two weeks earlier. At his suggestion, the owner followed defendants as they left, and noted that they entered a station wagon, one side of which was dented or "bashed" near the door. In the afternoon following the burglaries two men (identified at trial as defendants) entered a bar in Tulare County, and one of them (identified at trial as Herschel) exchanged marked quarters for a bill. The owner, aware of the practice of marking coins used in a record machine, took the number of their car, which was a station wagon dented on the side. She gave the number to police, who found that it was registered to defendant William. Defendants passed marked coins in other establishments in the same area on the day of the burglary and the next day. At 8:30 a.m., the second day following the burglary, a police officer went to William's San Jose apartment. He had a search warrant but did not use it. He arrested William and searched the apartment and his station wagon, which was parked in the driveway of the apartment house. In plain view on the front seat of the car was a knife on the blade of which appeared a flake of red coloring material similar to that used on the marked coins. In a tool box which William identified as his own, and which he said he never loaned, were a screwdriver, a nail puller and a hammer, all of which were identified at trial as matching marks in the Villa Roma.

Defendants contend that this search was unreasonable, and that their objection to introduction of the seized tools was erroneously overruled. They concede that William's arrest was lawful. ■■■ Because incident to a lawful arrest, both the search of the apartment (*People* v. *Torres*, 56 Cal.2d 864 [17

Cal.Rptr. 495, 366 P.2d 823]) and of the automobile (*People v. Daily,* 157 Cal.App.2d 649, 653 [321 P.2d 469]; *People v. Burke,* 208 Cal.App.2d 149, 158 [24 Cal.Rptr. 912] [hearing denied]) were reasonable and proper.

Defendants, however, contend that under a 1961 decision of the United States Supreme Court (*Mapp v. Ohio,* 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081]), the California rule is no longer applicable, and the federal rule must be followed. We find it unnecessary to determine this issue, since we are satisfied that the search here made was also proper under the federal rule.

It is true that in 1948 the United States Supreme Court held that a search without warrant, though incident to a lawful arrest, was unreasonable if there had been time to obtain a search warrant (*Trupiano v. United States,* 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663]). In 1950, however, *Trupiano* was expressly overruled insofar as it required a warrant for a search incidental to a valid arrest ''solely upon the basis of the practicability of procuring'' such search warrant (*United States v. Rabinowitz,* 339 U.S. 56, 66 [70 S.Ct. 430, 94 L.Ed. 653]). Defendants rely upon a 1961 decision (*Chapman v. United States,* 365 U.S. 610 [81 S.Ct. 776, 5 L.Ed.2d 828]) as modifying the rule of *Rabinowitz.* But *Chapman* did not involve a search incident to a lawful arrest. The reverse was true. The officer entered the house rented by defendant through a window, and without a warrant. The arrest was made when defendant returned to the house and entered it, finding the searching officer inside. *Chapman* restricts implications which might otherwise be drawn from *Rabinowitz.* But even the concurring and dissenting opinions do not suggest that it alters the core ruling of *Rabinowitz* as it applies to our case, wherein a search was but incidental to a concededly lawful arrest. Here the fruits of the search of the apartment were insignificant. The search of the automobile, which produced the crucial evidence of the tools, was far from ''general or exploratory.'' The tools found were in fact listed in the search warrant, and were precisely what the officer sought, even though he did not display or use that warrant. Moreover, the knife bearing incriminating pigment was openly visible in the car without search, and warranted the search which produced tools matching the pry marks in the burglarized bar. We hold that search to be valid under both federal and California rules.

The evidence sustains the conviction of William. His

ownership and possession of the tools used to force the doors of one bar, and his part in the passing of marked coins taken from the other, amply establish his participation in both burglaries. Herschel's passing of coins from the Hat's Club sustains his conviction on that count. As to the Villa Roma, the case against Herschel is somewhat weaker, but is sufficient. There is testimony of a third person who accompanied them that the two brothers were constantly together throughout the hours in which both burglaries occurred. Although neither testified at trial, Herschel's extrajudicial statements to the police misstated his whereabouts immediately following the burglaries. The evidence clearly established that he accompanied William to Tulare County with the fruits of one burglary in the car containing the tools used in the other.

Judgments affirmed.

Salsman, J., and Devine, J., concurred.