[Crim. No. 4550. First Dist., Div. Three. Jan. 7, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAKE LOOMIS, Defendant and Appellant.

Gregory S. Stout and Marvin S. Kayne for Defendant and Appellant.

Stanley Mosk, Attorney General, Edward P. O'Brien and Henry B. Lasky, Deputy Attorneys General, for Plaintiff and Respondent.

SALSMAN, J.—Appellant was convicted of a violation of Penal Code section 12021 (possession of a gun by a person previously convicted of a felony), and he appeals from the judgment.

Appellant's first contention is that he could not properly be convicted under Penal Code section 12021 because in fact he had no prior felony conviction.

The record before us shows that on July 21, 1958, appellant was found guilty of a violation of 18 United States Code Annotated section 2421 (commonly known as the Mann Act). Imposition of sentence was suspended, and appellant was placed on probation for a period of 5 years.

On May 4, 1963, under circumstances hereafter related, appellant was arrested for possession of a switchblade knife, in violation of San Francisco Municipal Police Code section 1291. At the time of his arrest officers searched appellant's car and found a gun.

On June 13, 1963, pursuant to 18 United States Code Annotated section 5021(b),[1] appellant obtained an order of the United States District Court for the Southern District of California discharging him from his prior conviction.

On June 24, 1963, appellant was charged with a violation of Penal Code section 12021, based upon the possession of the

---

[1] 18 U.S.C.A. section 5021(b) provides: ''Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.''

gun discovered by the officers in their search of appellant's car on May 4, 1963.

■ Appellant first contends that he has never suffered any conviction as that term is used in Penal Code section 12021 because, in the federal proceedings, imposition of sentence was suspended and he was placed on probation. This is not the law. Both federal and state courts have held that a plea or finding of guilty constitutes a conviction within the meaning of the statutes whose applicability depends upon prior offenses. (*Tanzer* v. *United States* (9th Cir. 1960) 278 F.2d 137; *People* v. *Banks,* 53 Cal.2d 370, 387-391 [348 P.2d 102]; *Stephens* v. *Toomey,* 51 Cal.2d 864, 869 [338 P.2d 182]; *People* v. *Esters,* 220 Cal.App.2d 917, 922 [34 Cal. Rptr. 264]; see also *Korematsu* v. *United States,* 319 U.S. 432, 435 [63 S.Ct. 1124, 87 L.Ed. 1497]; *Gutierrez* v. *Immigration & Naturalization Service* (9th Cir. 1963) 323 F.2d 593, 596; *Adams* v. *United States* (9th Cir. 1962) 299 F.2d 327, 329.)

■ Appellant argues, however, that since the federal court has acted to set aside his conviction, pursuant to 18 United States Code Annotated section 5021(b), the California court is without jurisdiction to consider his federal conviction as anything but nonexistent. This contention is based in part upon the supremacy clause of the United States Constitution, article VI. Of course we recognize the supremacy of the federal Constitution and all applicable federal laws in appropriate situations, but we do not believe we are here compelled to say that appellant may not be convicted of a California offense committed by him before the federal court entered its order vacating his former conviction. As we have heretofore noted, appellant committed the offense of which he now stands convicted on May 4, 1963. He was not discharged from his federal conviction until June 13, 1963. One of the conditions of appellant's federal probation was "that he obey all laws, Federal, State and Municipal. . . ." during the period of his probation. It cannot be disputed that on May 4, 1963, appellant's conduct was in violation of state and municipal laws and was also in violation of the terms of his probation.

Appellant argues in effect that his June 13, 1963, discharge by the federal court must be given retroactive effect; that it "wiped the slate clean" so far as his status as a convicted felon is concerned, and thus, even though he may have possessed a gun on May 4, 1963, he cannot now be considered

to have violated Penal Code section 12021. We find this argument unconvincing. Appellant's status at the time he possessed the gun is the critical issue. At that time he was a person who had been convicted of a felony, within the meaning of both federal and state laws. His discharge from his federal conviction cannot operate to relieve him of a California offense committed by him before the date of his discharge. His status after the date upon which he committed the offense here in question or at time of trial is immaterial.

Appellant cites and relies upon *In re Ringnalda* (D.C.S.D. Cal. 1943) 48 F.Supp. 975. We do not think that case is applicable to the facts of the case now before us. In *Ringnalda* the petitioner applied for citizenship on October 16, 1942, and was required to show three preceding years of good moral character. On June 6, 1941, petitioner was convicted of a felony in California and June 15, 1942, the felony was expunged, pursuant to Penal Code section 1203.4. The court held that the petitioner was not precluded from showing good moral character as of the date of his application for citizenship. The critical date in *Ringnalda* was the date of the petitioner's application. On that date he had fully complied with the terms of his probation. His prior conviction had been set aside and the proceedings dismissed pursuant to Penal Code section 1203.4. Here, as we have noted, the offense of which appellant was convicted was committed at a time when the terms of his federal probation were in full force and effect, and before his conviction had been vacated. We also note that on virtually identical facts another federal court refused to follow the *Ringnalda* decision and reached a contrary result. (See *In re Paoli* (D.C.N.D.Cal. 1943) 49 F.Supp. 128.)

Appellant also contends that the gun found in his car and later introduced into evidence was obtained as a result of an illegal search and seizure and was therefore inadmissible. It becomes necessary, therefore, to set forth some of the evidence in the record relating to appellant's arrest and the later search of his car.

On May 4, 1963, Officers Ryan and Starkey and an undercover agent, were investigating complaints of prostitution in the vicinity of Third and Perry Streets, an industrial and warehouse section of San Francisco. About 1:30 a.m. the officers saw appellant driving about the area in his automobile. The officers had some knowledge of appellant. One

of the officers recognized appellant on the basis of a mug shot which he had seen some time before. He also knew that Loomis had suffered a prior Mann Act conviction. Later the officers saw appellant's car parked on the premises of a closed gasoline service station. Appellant was talking with three women. The officers recognized the women, knew them to be prostitutes, and had previously arrested at least one of them on charges growing out of prostitution. Shortly thereafter, the officers talked with appellant and asked him to explain his presence in that section of the city at that late hour. Appellant claimed to be looking for a warehouse to rent for use in a projected milk distribution business. The officers told appellant they suspected that he was responsible for the prostitution activities of Linda Donnell and Anna Clark, two of the women he was then with. They advised him to leave the area.

At about 11:30 p.m. of the same day, the officers again saw appellant in the same area. He was talking with a Mohammed Jama. Just before their second encounter with appellant, officers had arrested Sybil Jama and Linda Donnell for prostitution. The officers approached appellant and asked him what he was doing. One of them made a cursory search of his person and found a switchblade knife, and arrested him for possession of this weapon. Appellant's car was parked four car lengths away. The officers proceeded to it, searched it, and found a gun under the rug on the driver's side of the vehicle. Shells for the gun were found in the glove compartment. Appellant admitted that he owned the weapon.

On facts here present we do not think search of appellant's vehicle was unreasonable, or that it violated any constitutional right of appellant. At the time of search the officers possessed knowledge of the facts which we have heretofore related. On these facts we think the officers had reasonable cause to believe that appellant was engaged in a violation of Penal Code section 266h (pimping). ▮ An officer may arrest a person without warrant if he has reasonable cause to believe the person to be arrested has committed a felony, whether or not a felony has been committed. (Pen. Code, § 836, subd. (3).) The decided cases have pointed out that there is no precise formula for the determination of reasonableness—each case must necessarily be decided upon its own facts. (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]; see also *People* v. *Esters, supra,* 220 Cal.

App.2d 917, 920.) Since the officers could reasonably believe that appellant had committed a felony, search of his vehicle was reasonable. We recognize that a search incident to an arrest may extend to "premises" under the immediate control of the one arrested, and that premises remote from the place of arrest may not be searched as such an incident (*People* v. *Cruz*, 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889]). We note, however, that the search condemned by *Cruz* was of an apartment and its contents, and that search of the automobile in which defendant was arrested was not held improper. In a decision filed only 3 months before *Cruz* (*People* v. *Burke*, 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67]), the Supreme Court pointed out the distinctions between search of an automobile and of a residence. In *Burke*, the immediate search of defendant's automobile was held proper, even though he was arrested in a nearby building. We cannot distinguish that case from the one at bench.

Officer Starkey testified in effect that the purpose of the search of the car was to discover the suspected existence of books, papers and records relating to the prostitution activities of the women with whom appellant was then associating. Two of the women had just been arrested for soliciting acts of prostitution and were in custody. It is true that in their search of appellant's vehicle the officers did not discover books and records relating to prostitution, but instead found a gun. They were not bound to ignore this evidence, nor was the evidence rendered inadmissible simply because it was unrelated to the purpose for which the search was originally begun. (See *People* v. *Roberts*, 47 Cal.2d 374, 379 [303 P.2d 721]; *People* v. *Shafer*, 183 Cal.App.2d 127, 128-129 [6 Cal.Rptr. 594]; *People* v. *Koelzer*, 222 Cal. App.2d 20, 29 [34 Cal.Rptr. 718].)

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied February 4, 1965, and appellant's petition for a hearing by the Supreme Court was denied March 3, 1965. Peters, J., was of the opinion that the petition should be granted.