[Crim. No. 11160.   Second Dist., Div. Three.   July 31, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. PHILIP WIL-LIAM FRITZ et al., Defendants and Appellants.

Philip William Fritz, in pro. per., Bertram M. Ross, under appointment by the Court of Appeal, and Robert W. Stanley for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William A. James, Assistant Attorney General, and Walter R. Jones, Deputy Attorney General, for Plaintiff and Respondent.

COBEY, J.—These are appeals from two judgments of conviction of the appellants of the felonies of attempted robbery (Pen. Code, §§ 664, 211), assault with intent to commit murder (Pen. Code, § 217), and robbery of the first degree, (Pen. Code, § 211a), with specified admitted prior convictions as charged in a three-count information.

The judgments appealed from differ only in their specification of the prior convictions involved and in the circumstance that the jury did not find that appellant Patillo was personally armed at the time of the commission of the crimes, while it found that appellant Fritz was so armed. In addition it did find that both appellants were personally armed with concealed loaded hand guns at the time of their arrest. Both appellants were sentenced in these judgments to imprisonment in the state prison for the term prescribed by law on the three counts.

Shortly before 3:30 a.m. on the night of January 1, 1965, John Ortiz, the operator of the Stardust cocktail lounge, located in the City of Downey, in Los Angeles County, California, in the company of his friend Roy Berry, was stopped by three masked men while crossing the parking area toward his parked car. He had just locked up this establishment. The first of these masked men pointed a .45 automatic at his stomach and ordered Ortiz and Berry to go back in the cocktail lounge and open the safe. Two of these three masked men were appellants, and two, at least, of them were armed with drawn hand guns.

When the group reached the front door of the establishment, Berry stuck his hand in one of his pockets, which prompted one of the masked men to start searching him. While the attention of the three masked men was so distracted Ortiz unlocked the front door, jumped through it and then tried to close and bolt it from the inside, by dropping down on one knee and pushing it shut with his body. Two of the three masked men prevented this by pushing against the door from the outside and the one armed with a revolver fired

three shots at a distance of 6 to 10 inches at the door jamb. Two of the three bullets so fired ricocheted and wounded Ortiz in the right shoulder. Ortiz thereupon got up and released his pressure from the door. The masked men at once entered the darkened bar with Berry, but as the third masked man came in Ortiz, who was hiding behind the door, seized the opportunity to escape and in spite of a call to halt or be shot, he kept on running a couple of blocks to a nearby restaurant, the Pancake Platter, where the police were called. The police responded to this call in five minutes or less.

Meantime, one of the masked men had taken Berry's wallet from him and two of them had then slugged him. Appellant Fritz had lifted his mask from his face in Berry's view, to talk to his two confederates. Immediately following Ortiz' escape, Berry saw the three masked men flee in an automobile. In their haste to get away they ran their car directly over the curb alongside the street in front and banged the rear portion of its underside quite loudly. The car went on down the street, without lights, but with sparks flying from the underside of its rear end.

At approximately 7:25 a.m. the same morning, the Downey police recovered an automobile gas tank a mile or less from the scene of the armed robbery, and about 3 o'clock that afternoon found the getaway car, without its gas tank, abandoned in a church parking lot. In this car they found, among other things, a dealer's certificate of sale showing that the purchaser of the car was one Christopher Crain, whose address was a specified one in Compton, California. Thereafter, the Downey police went to this address, ascertained it was an apartment house, then checked with the manager and from him learned that apartment 25 of this apartment house was then rented to a Christopher Crain and one Carter. They also learned that these two tenants corresponded in physical appearance to the general description of two of the three armed robbers which they had obtained from the aforementioned victims.

On Sunday, January 3, 1965, the Downey police thereupon established a stake-out in a vacant apartment next to apartment 25, but after extended surveillance by rotating teams of officers, they decided to abandon this surveillance and await word from the apartment house manager when and if the occupants of apartment 25 returned to that apartment. About 9 p.m. on the following evening, such word came. Two Downey police officers responded. These officers ran up to the apart-

ment, which was on the second floor, unannounced, kicked in the door without any warning whatsoever, covered the four persons they found there with their drawn guns, instructed them not to move, announced they were police officers, placed the four, including the two appellants, under arrest and advised them of their constitutional rights.

The two policemen then searched the persons of the arrestees and the apartment and found one loaded gun, a .32 automatic, in the refrigerator. This was close by the spot they had found appellant Patillo upon their unannounced entry. They took appellant Fritz downstairs into their car parked in front of the apartment house. There he told them that Christopher Crain was really his brother Don, who had been arrested in the apartment with him and in response to an inquiry as to how the four of them had gotten to the apartment, said they had come in two pickup trucks—a 1963 GMC and a 1961 Ford Falcon Ranchero. The police then went to the parking area of the apartment house and there found these two pickup trucks, which they then searched for some 40 minutes. They found nothing in the one truck but in the Ranchero they found, concealed under the right front seat, two more loaded guns, a .45 automatic and a .38 Enfield revolver.

The three loaded hand guns found by the police at the scene of the arrest were all introduced into evidence and identified by the victims as having been used in the commission of various of the crimes charged. In addition. the aforementioned victims identified appellants as their assailants.

Appellants attack their convictions on two fundamental grounds—that their arrest was unlawful, and that the search and seizure of the two loaded hand guns, introduced in evidence and obtained from the Ranchero, were unconstitutional. Appellants also question the sufficiency of the evidence generally to support their convictions, but the summarization of that evidence, which has just been made, shows this challenge to be without merit. Furthermore, for reasons which will now be set forth, neither of the appellants' two fundamental grounds for reversal are valid.

With respect to the lawfulness of their arrest, appellants first contend that they were arrested without warrant and without probable cause. It is true that they were arrested without warrant, but it is not true that they were arrested without probable cause.[1]  █  Penal Code, section 836, sub-

---

[1] This first contention could be disposed of on the ground that appellants waived it at the trial. The appellants' counsel said ''I don't ques-

division 3 expressly provides that a peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that that person has committed a felony. Thus, whether a peace officer has reasonable or probable cause under this statute to arrest a person on suspicion of his having committed a felony depends on the facts and circumstances known to that officer at the time of the arrest. (*People* v. *Privett*, 55 Cal.2d 698, 701 [12 Cal.Rptr. 874, 361 P.2d 602].) ▮ In this case, at the time of the appellants' arrest, the arresting officers knew that (1) an armed robbery, a felony, had been committed; (2) according to the dealer's certificate of sale found by the police in the armed robbers' abandoned getaway car, the owner of that car lived at the address where the arrest was made; (3) the manager of the apartment house at such address had, upon inquiry, told the police that a person bearing the name of such owner lived in apartment 25, the place of arrest, with one Carter; and (4) both of these individuals corresponded in general physical description to that which the victims of the armed robbery had given the police, roughly, about 5' 10½" height, 175 pounds in weight and about 25 years of age.

▮ Probable or reasonable cause for an arrest for a felony under the aforementioned Penal Code, section 836, subdivision 3, is such knowledge by the arresting officer at the time of the arrest of facts which would lead an ordinarily reasonable and prudent man then to believe and conscientiously entertain an honest and strong suspicion that the person he was arresting had committed a felony. (*People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) Here, the name of the owner of the getaway car which the police had, was not his true name and the description they had of the armed robbers was most general in nature. ▮ However, the arresting officers were entitled to rely upon all the information their fellow officers had obtained for them about the suspects (*People* v. *Melchor*, 237 Cal.App.2d 685, 690 [47 Cal.Rptr. 235]; *People* v. *Schellin*, 227 Cal.App.2d 245, 251 [38 Cal.Rptr. 593] hear. den., cert. den. 379 U.S. 1003 [13 L.Ed.2d 704, 85 S.Ct. 726]), and whether they had probable cause to make the arrests under review, is to be determined, not by the independent sufficiency of each single item of information in their possession at that time, but by the overall

or total sufficiency of all of the reliable information which they then possessed. (*People* v. *Gamboa,* 235 Cal.App.2d 444, 448 [45 Cal.Rptr. 393], hear. den.) ▮▮▮ Applying these standards to the facts of the case, it is apparent that the arresting officers here had reasonable and probable cause for the warrantless arrest of the appellants. (Cf. *People* v. *Brice,* 234 Cal.App.2d 258, 266-267 [44 Cal.Rptr. 231], hear. den.; *People* v. *Valles,* 197 Cal.App.2d 362, 368 [17 Cal.Rptr. 204]; *People* v. *Cartier,* 170 Cal.App.2d 613, 617-618 [339 P.2d 172]; *People* v. *Allen,* 196 Cal.App.2d 655, 659-660 [16 Cal. Rptr. 869].)

▮▮▮ Appellants next challenge the legality of their arrest on the basis that, admittedly, the statutory requirements of Penal Code, section 844 were not complied with in the manner of their arrest in that before kicking the door of apartment 25 in, the arresting officers did not demand admittance and explain the purpose for which they desired admittance. This statute permitting forcible entry in order to make an arrest is a codification of the common law rule to that effect and it has long been recognized in California that its statutory form carries with it, by implication, the same exemptions from compliance with these requirements, prior demand and explanation, that were developed in the common law with respect to the rule itself, namely, that these prior requirements need not be observed by the arresting officers, where, in good faith, they believe that to do so would either endanger their personal safety or increase substantially the suspects' chances for escape. (*People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6], cert. den. 352 U.S. 858 [1 L.Ed.2d 65, 77 S.Ct. 81]; *People* v. *Smith,* 63 Cal.2d 779, 797 [48 Cal.Rptr. 382, 409 P.2d 222].)

▮▮▮ The record shows that both of these conditions for exemption from the two requirements distinctly apply in this case. The arresting officers presumably knew at the time they arrived to arrest appellants that appellants had committed armed robbery and that one of them had used his hand gun in that robbery and wounded one of the victims by firing through a door. They thought, therefore, that in all probability the suspects would be armed and would be likely to use those arms. Furthermore, they knew that there were both front and rear exits to the apartment house and with only two officers immediately available to make the arrest they could not separate to cover both exits simultaneously. Under these circumstances, as one of the officers testified, they had to rely

14

on surprise both to protect themselves and to increase their chances of apprehending the suspects. We agree with the trial court that these circumstances warranted their noncompliance with the prior demand and explanation provisions of Penal Code, section 844.

We now turn to appellants' second basic contention that the search, which produced the loaded hand guns from the Ranchero which were introduced in evidence and identified to the jury as the weapons used in the commission of various of the crimes charged, was an unconstitutional one. In support of this contention appellants first argue that the arresting Downey police officers had no power, incident to the arrest, to search anything except appellants' persons for the weapons (Pen. Code, § 846) because they made both the arrest and the search of the vehicle in question in county area, just outside of Compton and admittedly outside of Downey. Consequently, at this location, they had only the arrest and search powers of private persons and not of peace officers.

Clearly, this was the law at the time of the arrest and search before us. (*People* v. *Martin,* 225 Cal.App.2d 91, 93-95 [36 Cal.Rptr. 924], hear. den.)[2] However, at the trial appellants did not object to the arrest and search on this specific ground and we will therefore not consider this argument on this appeal. (*People* v. *Talley,* 65 Cal.2d 830, 836-837 [56 Cal.Rptr. 492, 423 P.2d 564].)

This brings us to the final question to be answered in this opinion, was the search by the police of the Ranchero a constitutional search as incident to appellants' arrest?[3] If the place of arrest had been the Ranchero and the place searched

[2]It is no longer the law. Since September 1965, Penal Code, section 817 has contained the following language: ''The authority of a peace officer extends to any place in the state (a) as to a public offense committed or which there is probable cause to believe has been committed within the political subdivision that employs him or (b) if he has the prior consent of the chief of police or person authorized by him to give such consent if the place is within a city or the sheriff or person authorized by him to give such consent if the place is within a county.''

[3]Before the trial court the People contended that consent was given to make this search and attempted to concede that it was not made incident to the arrest. The trial court ruled against this contention of the People and held instead that the search was a lawful one as incident to an arrest. We are bound by the trial court's ruling on the consent issue on this appeal, particularly as the Attorney General has not challenged it. But we note that in any event the consent relied on by the People at the trial level was at best ambiguously given while appellant Fritz was handcuffed, and according to Fritz, did not extend to the Ranchero. In fact the police officer involved testified that he spoke to appellant Fritz ''to advise him we were going to shake the trucks down.''

as incident to such arrest had been apartment 25, the search would have been clearly unconstitutional as not limited to the premises where the arrest was made or not confined to the immediate vicinity of the arrest. (*People* v. *Henry,* 65 Cal.2d 842, 845 [56 Cal.Rptr. 485, 423 P.2d 557].) But in the converse situation, which we have here, the same result does not necessarily obtain. All searches of a suspect's car other than at the immediate time and in the immediate vicinity of his arrest are not ipso facto constitutionally unreasonable. (*People* v. *Webb,* 66 Cal.2d 107, 114 [56 Cal.Rptr. 902, 424 P.2d 342].) Searches of a parked automobile generally contemporaneous in time with the arrest but merely in the general vicinity of the point of arrest have been repeatedly upheld as incident to the arrest involved. (*People* v. *Green,* 235 Cal.App.2d 506, 507-508, 513-514 [45 Cal.Rptr. 371], arrest in store, search of parked car in lot adjacent to that of the store over one hour after arrest; *People* v. *Carrigan,* 213 Cal.App.2d 607, 608-609 [28 Cal.Rptr. 909], arrest in apartment, search of car parked in driveway of apartment house; *People* v. *Daily,* 157 Cal.App.2d 649, 653 [321 P.2d 469], arrest in house, search of car parked 50-60 feet distant; *People* v. *Burke,* 208 Cal.App.2d 149, 154, 158 [24 Cal.Rptr. 912], hear. den., arrest in hotel room, search of car parked outside; *People* v. *Burke,* 61 Cal.2d 575, 577, 580 [39 Cal.Rptr. 531, 394 P.2d 67], arrest by building, search of car apparently parked nearby; *People* v. *Loomis,* 231 Cal.App.2d 594, 598-599 [42 Cal.Rptr. 124], hear. den., arrest on street, search of car parked four car lengths away.)[4]

The basic reason for the greater latitude in meaning accorded the phrase ''place of arrest'' when that place is a car, as opposed to its being a fixed piece of property, is the great mobility of cars. (*Cooper* v. *California,* 386 U.S. 58 [17 L.Ed.2d 730, 732, 87 S.Ct. 788].) The wisdom of this view can readily be seen from the facts of the case before us. Here the police, immediately upon the arrest involved, searched the persons of the arrestees and the apartment in which they found them and uncovered but one gun. The police presumably believed that two or three guns had been used in the armed robbery occasioning the arrest; therefore they natur-

[4]Apparently the arrestees owned the car involved in each of the cases cited. This is not true in the instant case. However, the real ownership of the car searched is irrelevant to the point under consideration so long as the arrestee had, as here, the use and control of the vehicle searched immediately prior to his arrest. Otherwise a premium would be placed on suspects traveling in cars other than their own, such as stolen cars.

ally turned to the vehicles in which the arrestees, including appellants, had arrived at the place of arrest to continue their search for weapons used in the commission of the crimes involved. The search of these vehicles for this purpose had to be immediate because neither vehicle belonged to any of the arrestees and neither was then located on a highway. Under these circumstances neither vehicle was subject to impounding by the police (Veh. Code, § 22651) and each could have been picked up by its respective owner at any time.

For the foregoing reasons the judgments of conviction are affirmed.

Ford, P. J., and Moss, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied September 27, 1967. Peters, J., was of the opinion that the petition should be granted.