[Crim. No. 14610.    Second Dist., Div. Two.    Feb. 11, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. CAROL MARY COX et al., Defendants and Appellants.

Maurice Harwick and Paul Abram for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey T. Miller, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendants Carol Cox and Clarice Lundgren appeal from the judgments (Pen. Code, § 1237, subd. 1) entered following a jury trial which resulted in their conviction of the crime of burglary. Inasmuch as the evidence demonstrative of appellants' guilt is so conclusive as to render insufficient the usual descriptive adjective ''overwhelming,'' appellants necessarily challenge only the propriety of the conduct of those who harvested the evidence and the manner of its presentation to the trier of fact.

Appellants were seen to steal certain items from the Broadway Department Store in Downey, California by placing them in their large purses and removing them from the premises. When appellants observed that they were being followed into the parking lot by store personnel, they began running and leaped into their car. Before they could move away, however, a female security officer managed to wedge her body between the door and the car frame to the accompaniment of appellants' curses. A salesman also threw up the hood on their car to prevent them from driving away with the door open. Realizing they were trapped, appellants leaped from their vehicle and fled in different directions. After a considerable chase involving various Broadway employees, both appellants were returned to the store, still kicking, struggling and screaming obscenities.

The items stolen from the Broadway that day were still located in appellants' purses. A more thorough search of their car following their futile efforts to escape disclosed various items in such condition as to indicate that they had been stolen from other stores. A corresponding "shopping list" apparently prepared for use in their felonious pursuits was also discovered. After the arrival of the police appellants were advised of their constitutional rights. They proclaimed complete inability to explain how the stolen items had found their way into their purses.

By way of defense the one appellant who testified attempted to picture the entire proceeding as a grotesque frameup. She produced and presented what she asserted were "receipts" for all the apparently stolen items found in their car. The effectiveness of this maneuver was destroyed utterly when the prosecution called the managers of the stores involved to examine these "receipts." These witnesses then testified that these documents had been obtained long after appellants' arrest and were not "receipts" at all. The exposure of this brazen attempt to perpetrate a palpable fraud upon the jury rendered the jury's verdict of guilty inevitable.

Appellants' initial assignment of error relating to the receipt of the testimony of one of the prosecution witnesses by means of reading her testimony given at the preliminary hearing indicates that their trial counsel shared their proclivity for indulging in tactical defenses.[1] It has become a cliche that delay in a criminal proceeding usually redounds to the

---

[1]Appellants' counsel on this appeal did not represent them in the trial court.

advantage of the accused. On January 30, 1967, appellants' trial was continued on defendant's motion to March 20, 1967. On March 20, 1967, again on defense motion, it was continued to May 2, 1967. On May 2, 1967, on defense motion it was continued to May 12, 1967. On May 12, 1967, due to a congested calendar the cause was trailed to May 15, 1967. Thereafter "on defendant's motion, counsel ill" the matter was continued to May 18, 1967, thence to May 19, 1967, thence to May 22, 1967, and thence to June 6, 1967. On June 6, 1967, "on defendant's motion, counsel engaged" the cause was continued to June 7, 1967, and on that date to June 9, 1967.

Following the morning session on June 9, 1967, during which certain preliminary matters had been disposed of and a jury had been selected, the prosecution discovered that one of its witnesses was absent from the state.[2] Counsel advised the court that in view of this unexpected development, "an offer has been made by the People that there could be either a continuance in this matter, or stipulate to a mistrial, and set it at a later date when Miss Lemke will be available. She is coming back." Defense counsel rejected these offers, insisting on appellants' "right to a speedy trial."

Appellants' objections were overruled and the witness' testimony at the preliminary hearing was read to the jury. Appellants now contend that this procedure constituted reversible error. We do not agree. The instant case was tried after the effective date of Evidence Code section 240 (January 1, 1967), which, together with the simultaneous amendment of Penal Code section 686. changed the pre-existing law in California. (*People* v. *Woods,* 265 Cal.App.2d 712, 715 [71 Cal.Rptr. 583].) However, appellants at no time urged upon the trial court the proposition that the fact that the witness was absent from the state was no longer sufficient, without some further showing, to permit introduction of her earlier testimony as an "unavailable witness."

Appellants' objection to the introduction of the evidence was based solely on the grounds (1) that there was insufficient showing that the witness was absent from the state; and (2) that in any event the introduction of the witness' prior

---

[2] This witness' superior was called by the defense and testified that the witness had informed him that she believed the matter had been disposed of and had sought and been granted a leave of absence. Her return was anticipated and because of the excellence of her services, he "looked forward to her return."

testimony was a violation of their constitutional right of con-
frontation. Neither of these contentions bore any semblance of
merit. The evidence that the witness was vacationing in Okla-
homa was virtually unquestioned and unquestionable. Since
the confrontation of the witness afforded appellants at their
preliminary hearing was adequate, the instant case is very
different from *People* v. *Gibbs,* 255 Cal.App.2d 739 [63 Cal.
Rptr. 471], relied on by appellants. (Cf. *People* v. *Berger,*
258 Cal.App.2d 622, 627 [66 Cal.Rptr. 213].)

On appeal, appellants now argue that despite their failure
to raise the point in the trial court, and despite their refusal
to accede to the prosecution's offer to continue the matter,
nevertheless the evidence should not have been received by
reason of the prosecution's failure to introduce evidence to
establish the sufficiency of its efforts to return the witness to
this jurisdiction.

The unreasonableness of appellants' argument is self-
evident. The prosecution had the witness under subpoena and
on call. The witness apparently had been available on each of
the earlier scheduled trial dates. Since the defendants had
been granted some eight or nine continuances, it would seem
that they were hardly in a position to criticize the district
attorney for failing to anticipate that on the tenth scheduled
trial date the witness would fail to appear because of her
mistaken impression, thereafter conveyed to her superior,
"that the matter had been resolved."[3]

What efforts the prosecution might have made to produce
the witness after her absence became known is not an issue
here since it expressly offered to make the witness available
*but appellants declined such offer.* The failure of this calcu-
lated trial tactic to produce a result satisfactory to appellants
cannot now be converted into a ground upon which to predi-

---

[3]In this respect, the instant case is dissimilar to *People* v. *Harris,* 266
Cal.App.2d 426 [72 Cal.Rptr. 423], wherein the prosecution had failed
to make any effort to secure the attendance of a witness at the trial
until it issued a subpoena six weeks after the trial date had been set and
only nine days prior thereto. In the present case the following statements
of defense counsel to the trial court make clear that it was not contended
that the prosecution here was derelict in this respect: "It was apparent
on June 6th [a prior trial date three days earlier] that Diane Lemke was
under subpoena; she was on call as were the other witnesses in this mat-
ter. There is no reason why she should not have been present today, being
under subpoena; and there is no reason why we should not go forth with
her present. If she is not here, that is a failing on the part of the prose-
cution; and there is no waiver by the defense in this regard—in the
willingness of the defense to go ahead and ask for a speedy trial when
both sides maintain that they are ready."

cate a reversal. As stated in *People* v. *Woods, supra,* 265 Cal.App.2d 712, 716:

"Although the defendant has a constitutional right to be confronted by the witnesses against him, personal confrontation is not necessarily the most beneficial for him. Buckley [the absent witness] had been cross-examined extensively at the preliminary, and the apparent weaknesses in his story had been exploited. Defendant's defense consisted of his taking the witness stand and contradicting Buckley. If Buckley were forced to appear, he would be available both to assist the prosecutor in cross-examining defendant and perhaps to give further testimony in rebuttal. It is reasonable to assume that defendant and his counsel concluded that their prospects for successfully rebutting a cold transcript would be no less than their chances of refuting the witness in person."

Of course, in the instant case, unlike *People* v. *Woods, supra,* 265 Cal.App.2d 712, the evidence of appellants' guilt was so conclusive that if appellants' efforts to deceive the jury with the presentation of fraudulent "receipts" failed, no possibility of an acquittal existed regardless of the manner in which the prosecution's evidence was presented. The recent United States Supreme Court decision in *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318], which in essence raises the rule theretofore established in California by Evidence Code section 240 to constitutional dimension, does not assist appellants herein. As expressed in *People* v. *Ashford,* 265 Cal.App.2d 673, 683-684 [71 Cal.Rptr.619]:

" 'It is not, of course, the burden of the defendant to secure the presence of the state's witnesses to meet the constitutional requirement of confrontation. But if that right is not denied the defendant because he has in fact cross-examined a witness who then leaves the state, it is still within the power of the defendant to seek, through the machinery provided, the return of the absent witness. The defendant here made no such attempt.' [Citation.] So in this case, under the existing law, and the defendant's existing right to a speedy trial, *he could not sit back on his Sixth Amendment objection* with the knowledge that the witness would be available in a fortnight *without indicating to the court that he desired, or at least would be amenable to, a continuance.*" (Italics added.)

Of course, the instant case, unlike *Ashford,* was tried over five months after the effective date of Evidence Code section 240, and the appellants herein not only failed to indicate their desire for a continuance to permit the witness' return but

expressly and emphatically refused such a continuance. They may not now use their own decision as a basis for obtaining a reversal of the proper result reached herein.

Appellants next challenge the sufficiency of the *Miranda* warning given them by the police following their arrival at the Broadway store. Officer Dyrr testified:

"I looked straight at both defendants. I was no further than three feet away from both of them; I told them that I wanted to explain their constitutional rights to them, and I wished they would listen. I explained that they had a right to refuse to answer any questions or make any statements. If they did make any statements, that these could be used in court against them. They had a right to an attorney at all times, during any of the proceedings, and if they didn't have sufficient funds or means, that the County would provide counsel for them. I asked them if they both understood what I just explained. They both nodded their heads in an affirmative manner."

Although appellants did not testify to any misunderstanding of their rights in the premises, they now argue that the phraseology of the warning was such that a person *might have* believed that for some inexplicable reason the officer was advising them only of rights relating to *future court proceedings* and, thus, wholly irrelevant to the subject matter at hand, i.e., the solicitation of a statement. We doubt that such an interpretation could have been placed upon the officer's admonitions but we need not engage in any fine semantic analysis in the instant case.

The entirety of the statements given by the witnesses consisted of their indicating which of the two purses belonged to each of them, and a denial of any knowledge of how the stolen items came to be present therein. Assuming that the officer's warning was in anywise inadequate, it is clear beyond all reasonable doubt that no prejudice resulted from the receipt of appellant's statements.

Appellants also contend that the search of their car was improper because it was made subsequent to their capture a short distance therefrom. This contention is frivolous. The search was essentially contemporaneous with their arrest and properly incident thereto. (*People* v. *Webb*, 66 Cal.2d 107, 118 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; *People* v. *Green*, 235 Cal.App.2d 506, 512-513 [45 Cal.Rptr. 371].)

Appellants' final assignment of error is directed to the refusal of the trial court to permit an "investigator"

hired by the defense to qualify as an "expert" and, based upon his examination of the store premises made more than six months after the events in issue, to answer hypothetical questions designed to prove that in his "expert" opinion, the witness who had observed appellants' acts of theft could not have seen that to which she testified. The myriad of proper objections to this "evidence" are too numerous and self-evident to warrant detailed recital here.

It is sufficient to hold, as we do, that this witness was not entitled to give "expert" testimony on the matter in question (Evid. Code, § 801), and "The court may, and upon objection shall, exclude testimony in the form of an opinion that is based in whole or in significant part on matter that is not a proper basis for such opinion." (Evid. Code, § 803.)

The judgments are affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied March 14, 1969, and on March 13, 1969, the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied April 9, 1969.