[L.A. No. 29675. In Bank. Mar. 26, 1971.]

LINDA LA VERNE CAUGHLIN, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

J. Kenneth Jensen for Petitioner.

Lloyd Nocker as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

James Don Keller, District Attorney, Richard H. Bein and Terry J. Knoepp, Deputy District Attorneys, for Real Party in Interest.

---

## OPINION

**McCOMB, J.**—Petitioner seeks a writ of prohibition to compel the Superior Court of San Diego County to grant her motions to suppress evidence and to set aside the information (Pen. Code, §§ 1538.5, 995). She was charged with possession of marijuana and possession of restricted dangerous drugs. (Health & Saf. Code, §§ 11530, 11910.) She urges that there was no competent evidence introduced at the preliminary hearing to show that the purse and its contents belonged to her and that this evidence was obtained through an unconstitutional search and seizure in violation of her Fourth Amendment rights. We find no merit in these contentions.

The facts are not in dispute. While petitioner was shopping in a store in La Jolla, California, the store manager saw her pick up two boxes of incense and put them in the right hand pocket of her pants. He followed her to the cash register to see if she would pay for the merchandise that she had put into her pocket. She did not. She did pay for other boxes which were put into a bag. The manager followed her out of the store, confronted her and requested her to come to his office. In his office he asked her to remove the boxes from her pocket and place them on the table. He then called the police.

Officer James Carver responded to the call. The manager told Carver what he had observed and showed him the boxes on the desk. Carver then informed petitioner that she was under citizen's arrest and that he was taking her into custody. He asked if she had any identification with her. She replied that she did not and that she did not carry her purse. She did give him the data needed for the arrest report—her name, address, age, height and weight. He then marked the evidence, gave it to the manager, handcuffed petitioner and took her across the street to the police patrol car.

Petitioner had a dog with her. Carver told her that he would have to impound the dog while he took her to jail but offered to take the dog to some place close by if she would indicate where she wanted it taken. She replied that she would take it to a friend but that the telephone number she needed was in a notebook which she had left in her car. She asked if she could get the notebook and told him that her car was parked behind the store. He drove her to her car. She asked if she could get the notebook herself, stating

that it was hidden and that he could not find it. He advised her that he could not let her do that but that he would get it for her if she would tell him where to look. At the preliminary hearing he explained that she was already in handcuffs and that it was not authorized police procedure to unhandcuff someone once they were under arrest. Petitioner told him that the notebook was next to the console in between the seats, and Carver found it in the place indicated. As he picked it up he saw a white purse sitting on the floorboard. He picked up the purse and placed the purse and the notebook on the hood of his car.

The purse was large and fairly full, it had no zipper, and the top was open about four inches in width. When Carver set the purse down on the hood he saw within the opening a package of clear cellophane about four inches long and two to three inches wide. He had been on the force nine years and had taken special training in the identification of the texture and appearance of marijuana. From his experience and from his observation he concluded that the cellophane package contained marijuana.

Search of the purse revealed two packages of marijuana and some containers. For purposes of the preliminary hearing only it was stipulated that the two packages each contained 82 grams of marijuana, and that in the containers were two marijuana cigarettes, some LSD capsules, and a usable quantity of hashish. Carver then placed petitioner under arrest for possession of marijuana and for possession of dangerous drugs. (Pen. Code, § 836, subd. 1, a peace officer may make an arrest without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence.) He then locked her car with the keys found in the purse, delivered the dog as directed by petitioner, took her to police headquarters, and placed the evidence in the narcotics property locker.

■ QUESTION: *Did the trial court properly deny the motion to set aside the information and the motion to suppress the evidence?*

*Yes.* The motions were based on the grounds that there was no competent evidence to show that the purse belonged to petitioner and that the incriminating evidence was illegally seized. By stipulation of the parties the court read and considered the transcript of the preliminary examination in lieu of oral evidence as to the motion to suppress the evidence. ■ Evidence that will justify a prosecution need not be sufficient to support a conviction. An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. ■ A reviewing court may not substitute its judgment as to the weight of the evidence for that of the magistrate, and every legitimate inference that may be drawn by the

reviewing court from the evidence must be drawn in favor of the information. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197] and cases cited.)

■ There was competent evidence to support the magistrate's conclusion that the purse belonged to petitioner. She had no purse with her when she was arrested for shoplifting. She identified the car as belonging to her and she described the exact location therein of her notebook. The magistrate could reasonably infer that the purse sitting on the floorboard of the car at that time also belonged to her. No contrary evidence was produced. She had ownership of the car and constructive ownership of its contents. The things which a person possesses are presumed to be owned by him. (Evid. Code, § 637.) Knowledge by petitioner of the contents of her purse and of their narcotic character may be shown by circumstantial evidence. (See *Rideout* v. *Superior Court, supra,* 67 Cal.2d 471, 474-475; *People* v. *Von Latta* (1968) 258 Cal.App.2d 329, 334 [65 Cal.Rptr. 651]; see 2 Witkin, Cal. Crimes (1963) pp. 631-635.)

Under the facts of this case and the legal decisions governing permissible search and seizure at the time in question,[1] there was a lawful search and seizure of personal property in plain view in a motor vehicle over which the arrestee had constructive control and to which she directed the police officer. The purse was taken virtually contemporaneously with the arrest and properly incident thereto. (*People* v. *Harris* (1965) 62 Cal.2d 681, 683 [43 Cal. Rptr. 833, 401 P.2d 225]; *People* v. *Burke* (1964) 61 Cal.2d 575, 580 [39 Cal.Rptr. 531, 394 P.2d 67]; *People* v. *Cox* (1969) 269 Cal.App.2d 579, 585 [75 Cal.Rptr. 147], hg. den.; *People* v. *Fritz* (1967) 253 Cal.App.2d 7, 14-15 [61 Cal.Rptr. 247], hg. den.; *People* v. *Green* (1965) 235 Cal. App.2d 506, 513 [45 Cal.Rptr. 371]; *People* v. *Loomis* (1965) 231 Cal. App.2d 594, 599 [42 Cal.Rptr. 124], hg. den.)

The alternative writ heretofore issued is discharged and the peremptory writ is denied.

Mosk, J., Burke, J., and Wood, J.,* concurred.

**TOBRINER, Acting C. J.**—I dissent. In my view the police officer's warrantless seizure of defendant's purse from within her car was too remote from her arrest properly to be considered "incident" to that arrest under

---

[1]The challenged search occurred on January 2, 1969, and the limitations imposed by *Chimel* v. *California,* 395 U.S. 752 [25 L.Ed.2d 685, 89 S.Ct. 2034], are not here applicable. (*People* v. *Edwards,* 71 Cal.2d 1096, 1106-1107 [5a] [80 Cal.Rptr. 633, 458 P.2d 713].)

*Assigned by the Acting Chairman of the Judicial Council.

pre-*Chimel*,[1] as well as post-*Chimel,* standards, and thus I believe the evidence obtained as a result of that seizure must be suppressed.

The standards governing "incidental" searches and seizures conducted prior to *Chimel* were authoritatively set forth by this court in *People* v. *Cruz* (1964) 61 Cal.2d 861, 865-866 [40 Cal.Rptr. 841, 395 P.2d 889]: "[A] search is not 'incidental to an arrest' unless it is *limited to the premises where the arrest is made;* is contemporaneous therewith; has a definite object; and is reasonable in scope." (Italics added.)[2] In applying this standard in the *Cruz* case itself, this court held that where a defendant was arrested in a car in front of an apartment, a contemporaneous search of the apartment was not confined to the "premises" of the arrest and could not be justified as incident thereto. Similarly, in *People* v. *Henry* (1967) 65 Cal.2d 842, 845-846 [56 Cal.Rptr. 485, 423 P.2d 557], we rejected a claim that, when the police searched defendant's second floor hotel room after arresting him a few steps from the hotel entrance, the search had been "limited to the premises" of the arrest. (See also *People* v. *Sandoval* (1966) 65 Cal.2d 303, 307 fn. 1 [54 Cal.Rptr. 123, 419 P.2d 187]; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116].)

In the instant case defendant was apparently arrested in front of the store by the store manager and was then taken to his office inside the store. The subsequent seizure of her purse from the interior of an automobile located in the parking lot behind the store was clearly not "limited to the premises where the arrest [was] made," as that area has been defined by the above precedent.

The majority, however, ignore the explicit limitations of the controlling *Cruz* standard and instead rely on a series of cases which suggest that under pre-*Chimel* law the geographic limits applicable to incidental searches of *automobiles* differ from the limits governing incidental search of *residences*. Although the overwhelming majority of these decisions reach this conclusion without resort to rational justification, the explanation proffered

---

[1]*Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. Under the standards established in *Chimel,* the instant search could not possibly be justified as incident to an arrest. *Chimel* declares that the permissible scope of a search incident to an arrest extends only to "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (395 U.S. at pp. 763, 766 [23 L.Ed.2d at pp. 694, 695].) Without question the defendant's car and its contents were not within such an area of "immediate control" in the instant case.

[2]"A search 'can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.' " (*James* v. *Louisiana* (1965) 382 U.S. 36, 37 [15 L.Ed.2d 30, 31, 86 S.Ct. 151]; *Stoner* v. *California* (1964) 376 U.S. 483, 486 [11 L.Ed.2d 856, 859, 84 S.Ct. 889].)

in one opinion, *People* v. *Fritz* (1967) 253 Cal.App.2d 7, 14-16 [61 Cal. Rptr. 247], reveals the confusion apparently underlying all of these cases.

In *Fritz* the court explained that this differential treatment, permitting "incidental" searches of distant automobiles under circumstances in which a search of a residence would clearly be "too remote," was principally justified by the "great mobility" of cars. (253 Cal.App.2d at p. 15.) The mobility of cars has, of course, been the significant factor involved in the judicial determination that police officers possessing probable cause to search an automobile need not always seek a warrant; if the police were required to go to a magistrate to obtain a warrant before instituting the search, the car might be removed from the jurisdiction before the police returned. (See *Chambers* v. *Maroney* (1970) 399 U.S. 42, 48-52 [26 L.Ed.2d 419, 426-428, 90 S.Ct. 1975]; *Carroll* v. *United States* (1925) 267 U.S. 132, 153 [69 L.Ed. 543, 551, 45 S.Ct. 280, 39 A.L.R. 790].)[3]

A search incident to an arrest, however, does not involve the element of mobility at all. Prior to *Chimel,* this type of warrantless search had been permitted as "reasonable," not because of the "emergency" or "necessity" justification underlying *Chambers* and *Carroll,* but rather because it was strictly confined both spatially and temporally.[4] The potential mobility of an item outside of these restricted limits bears absolutely no relation to the "incidental search" concept, and thus cannot rationally justify a modification of the *Cruz* limitations.

The United States Supreme Court has never intimated that incidental searches of automobiles are to be judged by different standards than any other incidental searches. On the contrary, the court has consistently utilized one common test—"immediate vicinity"—in evaluating all incidental searches of automobiles (*Preston* v. *United States* (1964) 376 U.S. 364, 367-368 [11 L.Ed.2d 777, 780-781, 84 S.Ct. 881]; *Dyke* v. *Taylor Implement Co.* (1968) 391 U.S. 216, 220 [20 L.Ed.2d 538, 542, 88 S.Ct. 1472]) and residences (e.g., *James* v. *Louisiana* (1965) 382 U.S. 36, 37 [15 L.Ed.2d 30, 31, 86 S.Ct. 151]) alike. Indeed, in its recent decision in

---

[3]The People do not contend that the officer had probable cause to seize defendant's purse, and thus the action cannot be justified under the *Chambers-Carroll* rationale. (See *Dyke* v. *Taylor Implement Co.* (1968) 391 U.S. 216, 220 [20 L.Ed.2d 538, 542, 88 S.Ct. 1472].)

[4]In *Chimel* the court made clear that an "incidental" search can now only be justified by (1) the need to protect an officer from an arrestee's use of weapons and (2) the interest in preventing an arrestee from destroying or concealing evidence within his reach. As such the court held that an "incidental" search is reasonable only if it is limited to "a search of the person arrested and the area within his reach. . . ." (*Chimel* v. *California* (1969) 395 U.S. 752, 766 [23 L.Ed.2d 685, 696, 89 S.Ct. 2034].)

*Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], the court, after conducting a thorough review of all of its "incidental search" precedents (395 U.S. at pp. 755-764 [23 L.Ed.2d at pp. 689-695]), relied heavily on *Preston* v. *United States* (1964) 376 U.S. 364, 367 [11 L.Ed.2d 777, 780, 84 S.Ct. 881], a case involving an automobile search, to clarify the permissible limits of *any* search incident to an arrest. (395 U.S. at pp. 763-764 [23 L.Ed.2d at pp. 694-695].) Thus, although differences between automobiles and residences may be relevant to some aspects of the Fourth Amendment protection (see *Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975]), these differences do not justify an alteration of the permissible geographic limits of searches incident to an arrest. (See also *Lucas* v. *Mayo* (S.D.Tex. 1963) 222 F.Supp. 513, 515-516; *Conti* v. *Morgenthau* (S.D.N.Y. 1964) 232 F.Supp. 1004, 1008.)

As the United States Supreme Court recently observed in *Katz* v. *United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507], "the Fourth Amendment protects *people* not places." (Italics added.) The defendant in the instant case certainly maintained a reasonable expectation of privacy with respect to the contents of the purse which she left in the interior of her automobile. (Cf. *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1104 [80 Cal.Rptr. 633, 458 P.2d 713] (warrantless search of trash can violated the Fourth Amendment).) The majority fail to explain why this expectation of privacy should be subject to greater intrusion through an incidental search than any other personal privacy interest.

I conclude that the officer's seizure of defendant's purse cannot be justified as "incidental" to defendant's arrest, and that the People have failed to meet their burden of demonstrating proper justification for the warrantless seizure. I would suppress all evidence obtained as a result of the seizure.

Peters, J., and Sullivan, J., concurred.