**UNITED STATES of America**

**v.**

**Charles W. GLASGOW, Jr.**

**Crim. No. 1028–73.**

United States District Court,
District of Columbia.

Jan. 27, 1975.

---

Jason D. Kogan, Asst. U. S. Atty., for the U. S.

John J. Hurley, Alexandria, Va., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on the Defendant's Motion for Reconsideration

of Sentence.[1]  On January 4, 1974, the Defendant pleaded guilty to having illegally used the mails for the importation of marijuana (hashish) in violation of 21 U.S.C. §§ 843(b) and 952(a).  The offense in this case consisted of his having sent a quantity of hashish from India to a friend and former college classmate in the United States.  The Defendant was twenty-five years old at the time his plea was accepted by the Court.  He had no prior criminal record.

On February 19, 1974, the Court, in its discretion, suspended the imposition of sentence, and placed the Defendant on probation for three years, pursuant to 18 U.S.C. § 3651.[2]

By the Motion for Reconsideration of Sentence, the Defendant now seeks to be considered as a young adult offender under 18 U.S.C. § 4209 and, as such, placed on probation under 18 U.S.C. § 5010(a),[3] the applicable provision of the Federal Youth Corrections Act, 18 U.S.C. §§ 5005 et seq.  This modification and transfer of probation is sought by the Defendant so that he may later have the opportunity to have his conviction set aside under § 5021(b) of the Youth Corrections Act, and thus avoid the stigma of having a felony conviction on his record.

## I. IN ITS DISCRETION, THE COURT MAY MODIFY PROBATION ORDERED PURSUANT TO 18 U.S.C. § 3651.

■■ It is beyond dispute that the Court has the power to modify the conditions of the Defendant's probation. Section 3651 of Title 18, United States Code, provides, in pertinent part, that "the court may revoke or modify any condition of probation."  Such modification lies within the Court's discretion. Burns v. United States, 287 U.S. 216, 221, 53 S.Ct. 154, 156, 77 L.Ed. 266, 269, (1932) ; United States ex rel. Grossberg v. Mulligan, 48 F.2d 93, 94 (2d Cir. 1931) ;  Splawn v. Fitzharris, 297 F. Supp. 44, 45 (C.D.Cal.1969).  Furthermore, it has long been recognized that in the exercise of its discretion, the court should construe the statute liberally in light of the Probation Act's remedial nature and humanitarian purposes.  Mann v. United States, 218 F.2d 936, 940 (4th Cir. 1955) ;  Scalia v. United States, 62 F.2d 220, 223 (1st Cir. 1932) ;  Rosenwinkel v. Hall, 61 F.2d 724, 726 (7th Cir. 1932) ;  Reeves v. United States, 35 F.2d 323, 325 (8th Cir. 1929).  The legislative history of the Probation Act, as discussed in United States v. Murray, 275 U.S. 347, 354–355, 48 S.Ct. 146, 148, 72 L.Ed. 309, 311–312 (1928), reveals that the statute is to be sympathetically interpreted to facilitate the reform of young and new offenders; the approach mandated by Congress is one of "intelligent compassion".  United States v. Moore, 158 U.S.App.D.C. 375, 486 F.2d 1139, 1174 (1973) (Leventhal & McGowan, JJ., separate opinion).

■ Therefore, the determination of whether the Defendant's request falls within the modification of conditions of probation as authorized by 18 U.S.C. §

---

1. This motion is, in effect, one for modification of probation, and will be treated as such.

2. Notwithstanding the Court's statement at the sentencing hearing on February 19, 1974, that the Defendant's adult probationary sentence under 18 U.S.C. § 3651 was "irrevocable" (Transcript, p. 8), the Court expected to receive a motion for modification of probation.  At the time the original sentence was imposed, the Court believed that the Defendant would benefit from a stern lecture about the consequences of his offense, and that that would have a deterrent effect.  The Court felt, without so expressly stating, that if the Defendant made a good adjustment on probation, which he has, and if a motion for modification of probation were made, consideration could be given to changing the sentence to probation under 18 U.S.C. § 5010(a).  It is such a motion for modification which is now before the Court.

3. 18 U.S.C. § 5010(a) provides: "If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation."

3651 must be made in light of the rehabilitative purpose of the statute.[4] In Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266, the Court held that if that purpose is to be accomplished,

" . . . an exceptional degree of flexibility in administration is essential. It is necessary to individualize each case, to give that careful, humane, and comprehensive consideration to the particular situation of each offender which would be possible only in the exercise of a broad discretion."

287 U.S. at 220, 53 S.Ct. at 155. The criteria to be used by the court are the interests of justice, the public and the defendant. *Id.* at 221, 53 S.Ct. 154.

## II. PROBATION UNDER 18 U.S. C. § 5010(a) CONSTITUTES "TREATMENT" FOR THE PURPOSES OF THE YOUTH CORRECTIONS ACT AND 18 U.S.C. § 4209.

■ In the case now before the Court, the Defendant seeks to have his probation modified pursuant to 18 U.S. C. § 3651, and transferred to 18 U.S.C. § 5010(a), the probation provision of the Federal Youth Corrections Act. It is clear that he would be eligible as a young adult offender for consideration under the Act. A person between the ages of 22 and 26 at the time of conviction may be sentenced under the youth offender provisions if "the court finds there is reasonable grounds to believe that the defendant will benefit from the treatment provided under the Federal Youth Corrections Act."[5] 18 U.S.C. § 4209.[6]

■ The threshold question, therefore, is whether probation is a form of "treatment" for the purposes of the Youth Corrections Act and 18 U.S.C. § 4209. This determination must be made in light of the fact that both of those statutes "were designed by the Congress for the rehabilitation of youthful offenders, and not solely for confinement upon conviction for criminal offenses." Rawls v. United States, 331 F.2d 21, 27 (8th Cir. 1964).[7]

4. In declaring 18 U.S.C. § 3651 and the Youth Corrections Act constitutional, the Court of Appeals in United States v. Baker, 429 F.2d 1344 (7th Cir. 1970), held that the statutory provisions of § 3651 and the Youth Corrections Act "must be considered in light of the alternatives provided by Congress and the ultimate goals of rehabilitation and deterrence of subsequent criminal conduct. The current statutory scheme places in the hands of the courts, particularly the sentencing judge, the responsibility for balancing the competing interests of society and the individual offender, and determining which mode of correction will best accomplish the objectives of the Acts." *Id.* at 1347.

5. "[The young adult sentencing provision] contemplates that the Youth Act may be applicable to an offender in the slightly older age group only when the court makes a special finding that the defendant would benefit by the treatment methods prescribed by that act." S.Rep.No.2013, 85th Cong., 2d Sess. (1958), 1958 U.S.Code Cong. & Admin.News, p. 3892.
This requirement of an affirmative finding is the converse of the procedure for sentencing youth offenders under the Youth Corrections Act. That Act has been deemed to be a "*preferred* sentencing alternative" which is to be employed unless the court finds the offender will not benefit from treatment under the Act. Dorzynski v. United States, 418 U.S. 424, 446, 94 S.Ct. 3042, 3054, 41 L.Ed. 2d 855, 870 (1974) (Marshall, Douglas, Brennan & Stewart, JJ., concurring in the result). The Court of Appeals in this Circuit has similarly held that a youth offender has a "presumptive right" to rehabilitative treatment under the Youth Corrections Act. United States v. Phillips, 156 U.S.App.D.C. 217, 479 F.2d 1200, 1202 (1973); United States v. Coefield, 155 U.S.App.D.C. 205, 476 F.2d 1152, 1157 (1973) (en banc); United States v. Ward, 147 U.S.App.D.C. 149, 454 F.2d 992, 994 (1971); United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722, 724 (1970).

6. It should be noted that while placing the Defendant on probation pursuant to 18 U.S. C. § 5010(a) would not be a sentence, it is clearly a sentencing option.

7. It is also wise to keep in mind the admonition by Justice Holmes that "the meaning of a sentence is to be felt rather than to be proved." United States v. Johnson, 221 U.S. 488, 496, 31 S.Ct. 627, 55 L.Ed. 823, 826 (1911).

The government urges that "treatment" is available under the Youth Corrections Act only where the youth has been *committed* pursuant to 18 U.S.C. § 5010(b) or § 5010(c). The government reasons that since § 5011 of the Act, which describes various treatment alternatives, speaks in terms of "committed youth offenders", and since one who is on probation is not, technically speaking, "committed", therefore, probation does not constitute "treatment" under the Act. Based upon this conclusion, the government contests the placing of the Defendant on probation under § 4209, which requires this Court to find that the Defendant is a suitable subject for "treatment". The government's reasoning, and, therefore, its conclusion, is fundamentally flawed because, and this Court holds, probation is a form of "treatment" for the purposes of the Youth Corrections Act and 18 U.S.C. § 4209.[8]

The flaw in the government's reasoning is that the use of the word "committed" in 18 U.S.C. § 5011 does not make treatment dependent upon the youth offender's being sentenced to the custody of the Attorney General pursuant to 18 U.S.C. § 5010(b) or § 5010(c). In the first place, § 5011 is not the definitional section of the statute. Rather, 18 U.S.C. § 5006, entitled "Definitions", states that " 'Treatment' means corrective and preventive guidance designed to protect the public by correcting the antisocial tendencies of youth offenders." 18 U.S.C. § 5006(g). This definition is broad enough to include both probation and commitment, as well as other methods of treatment. Section 5011 must be read

as merely setting out some of the treatment options available to the sentencing judge; it does not preclude other alternatives for effectively treating the youth offender.[9]

A less technical but more fundamental reason for rejecting the government's argument, however, is the fact that to accept the strained construction of the statute urged by the government would frustrate the purposes of the Youth Corrections Act, and would harshly deny the defendant the benefit of 18 U.S.C. § 4209. The Youth Corrections Act "looks primarily to the objective idea of rehabilitation" and is based on the theory that the interests of society and of individual defendants will best be served by substituting for retributive punishment "methods of training and treatment designed to correct and prevent antisocial tendencies." H.R.Rep. No. 2979, 81st Cong., 2d Sess. (1950), 1950 U.S.Code Cong.Serv. p. 3985. It was "designed to provide a better method for treating young offenders convicted in federal courts . . . to rehabilitate them and restore normal behavior patterns." Dorzynski v. United States, 418 U.S. 424, 433, 94 S.Ct. 3042, 3048, 41 L.Ed.2d 855, 863 (1974).

It is against this legislative background that the term "treatment" must be viewed. As Justice Cardozo asserted, "the meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view."[10] Therefore, the broad definition of "treatment", 18 U.S.C. § 5006(g), must be liberally construed in order to effectuate the purposes of the Act.

---

8. Words used in 18 U.S.C. § 4209 and in the Youth Corrections Act "should be accorded the same meaning" as § 4209 has been "integrated" into the Youth Corrections Act. United States v. Kleinzahler, 306 F.Supp. 311, 313 (E.D.N.Y.1969).

9. Such a reading is consistent with the Act's emphasis on allowing the judge wide discretion in prescribing the form of treatment best suited to the needs of the individual youth offender.

10. Panama Refining Co. v. Ryan, 293 U.S. 388, 439, 55 S.Ct. 241, 256, 79 L.Ed. 446, 468 (1935) (dissenting). Justice Holmes shared this approach to statutory construction: "[T]he general purpose [of a statute] is a more important aid to the meaning than any rule which grammar or formal logic may lay down." United States v. Whitridge, 197 U.S. 135, 143, 25 S.Ct. 406, 408, 49 L.Ed. 696, 698 (1905). See also Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527, 535–38.

Logic and sound judicial construction dictate that young offenders who are not committed may receive and benefit from probation and other non-institutional forms of treatment.[11] A contrary reading would mean that a youth offender, not in need of commitment, but likely to benefit from being placed on probation, would not receive treatment under the Act. Such is clearly not the case. There can be little doubt that probation constitutes a form of "corrective and preventive guidance designed to protect the public by correcting the antisocial tendencies" of offenders, and thus is treatment as defined in 18 U.S.C. § 5006(g). The basic purpose of probation is "to provide an individualized program offering a young or unhardened offender an opportunity to rehabilitate himself without institutional confinement under the tutelage of a probation official and under the continuing power of the court to impose institutional punishment for this original offense in the event that he abuse this opportunity." Roberts v. United States, 320 U.S. 264, 272, 64 S.Ct. 113, 117, 88 L.Ed. 41, 46 (1943).[12] Under this "system of tutelage", Frad v. Kelly, 302 U.S. 312, 318, 58 S.Ct. 188, 192, 82 L.Ed. 282, 287 (1937), it is the duty of the probation officer "to aid the persons on probation and to bring about improvements in their conduct and condition." United States v. Murray, 275 U.S. 347, 354, 48 S.Ct. 146, 148, 72 L.Ed. 309, 311 (1928). Therefore, probation is clearly a form of treatment which is designed to assist in the rehabilitation of the youth offender.

This conclusion is supported by the American Bar Association in its recently adopted standards on probation.[13] The standards are based on the belief that:

> "Probation is an affirmative correctional tool, a tool which is used not because it is of maximum benefit to the defendant (though of course, this is an important side product), but because it is of maximum benefit to the society which is sought to be served by the sentencing of criminals." [14]

Probation is an effective and desirable disposition because "it maximizes the liberty of the individual while at the same time vindicating the authority of the law and effectively protecting the public from further violations of law . . . [and] it affirmatively promotes the rehabilitation of the offender by continuing normal community contacts. . . ." [15]

---

11. "Probation proceeds on the theory that the best way to pursue . . . [the goal of avoiding future crimes by helping the defendant learn to live productively in the community which he has offended against] is to orient the criminal sanction toward the community setting in those cases where it is compatible with the other objectives of sentencing. Other things being equal, the odds are that a given defendant will learn how to live successfully in the general community if he is dealt with in that community rather than shipped off to the artificial and atypical environment of an institution of confinement." ABA Standards Relating to the Administration of Criminal Justice, Compilation (1974), p. 385 [hereinafter cited as ABA Compilation].

12. As defined more prosaically, "Probation is the attempted saving of a man who has taken one wrong step, and whom the judge thinks to be a brand who can be plucked from the burning at the time of the imposition of the sentence." United States v. Murray, 275 U.S. 347, 358, 48 S.Ct. 146, 149, 72 L.Ed. 309, 313 (1928).

13. ABA Standards, Probation (1970). The probation standards recommended by the National Advisory Commission on Criminal Justice Standards and Goals are consistent in principle with those adopted by the ABA. See Comparative Analysis of Standards and Goals of the National Advisory Commission on Criminal Justice Standards and Goals with Standards for Criminal Justice of the American Bar Association, Lib.Cong. No. 74–75181 (1974), pp. 470–523.

14. ABA Compilation, supra, note 11, at 386.

15. ABA Standards, Probation (1970), §§ 1.-2(i), (ii). The deterrent and rehabilitative effects of probation are deemed by the ABA to be so substantial, when probation is administered under a system which is adequately funded and sufficiently manned by skilled personnel, as to render probation the preferred disposition in all criminal cases, to be imposed "unless particular aggravating facts emerge in the case at hand". ABA Compilation supra, note 11, at 386.

III. IN LIGHT OF THE DEFENDANT'S BACKGROUND AND THE CIRCUMSTANCES SURROUNDING THE COMMISSION OF THE OFFENSE, THE COURT FINDS THAT THE DEFENDANT WILL BENEFIT FROM TREATMENT PROVIDED UNDER THE YOUTH CORRECTIONS ACT.

The Defendant may be considered as a young adult offender and placed on probation pursuant to 18 U.S.C. § 5010(a) only if this Court finds that "there is reasonable grounds to believe that the defendant will benefit from the treatment provided under the Federal Youth Corrections Act." 18 U.S.C. § 4209. In reaching its decision, this Court must take into consideration "the previous record of the defendant as to delinquency or criminal experience, his social background, capabilities, mental and physical health, and such other factors as may be considered pertinent." *Id.* The final determination lies within the discretion of this Court. United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722, 723 (1970); United States v. Wilson, 450 F.2d 495, 497 (4th Cir. 1971). In its discretion, using the criteria set forth in the young adult offender statute, this Court finds that the Defendant will benefit from treatment available under the Youth Corrections Act.

## A. *The Defendant's Background*

The Defendant, 25 years old at the time of his conviction, has always resided with his family in the Washington, D.C. area. In 1967, he graduated from high school, where he was active in school athletics, was president of the Hi 4 Club, and received a D.A.R. Citizenship Award for Outstanding Leadership. Upon completing high school, the Defendant entered Washington and Lee University, where he majored in art and history. He graduated in June 1971, with a Bachelor of Arts degree. While at Washington and Lee, he participated in intramural sports and dramatics.

Prior to the offense involved here, the Defendant *had no criminal record.*

The Presentence Report described the Defendant's family as reputable and stable. The Defendant is presently living with his parents and three of his four siblings. His father owns and operates a seafood business in which the Defendant worked during his summer vacations while in high school and college. Since May 1973, the Defendant has been working full time in the business, acting as Secretary of the company and taking charge when his father is absent. His father indicated to the probation officer that the Defendant has actively participated in the operation of the business, and has contributed toward its improvement. The Defendant's father hopes that his son will become president of the company in the near future. The Defendant plans to continue working in his father's business, and is also seriously considering marine biology and agriculture.

Therefore, the Defendant's background reveals that, with the exception of the offense in this case, he has been a hard-working and upstanding member of the community. He appears to have a close and healthy relationship with his family, and has the potential of enjoying a productive and satisfying future.

## B. *The Nature of the Offense*

Approximately six months after he graduated from college, the Defendant was afforded the opportunity of traveling extensively abroad. While in Nepal, he bought a quantity of hashish, in Nepalese currency equivalent to $25. The sale of hashish was legal in Nepal at the time of the purchase. The Defendant mailed the hashish, as a gift, to a former traveling companion and college classmate in Virginia. The package was addressed to a fictitious name in care of his friend. The Defendant admits that he has smoked marijuana, as have many young people today. He stated to the probation officer that the fact that purchasing hashish in Nepal was legal, and its inexpensive cost lured him to the ad-

mittedly immature act of mailing a small quantity to a friend in the United States.

The Defendant was 25 years old at the time the Court accepted his plea of guilty to a charge of using a communications facility, the mails, in the commission of a felony involving a controlled substance in violation of 21 U.S. C. §§ 843(b), 952(a). He admits that his sending the hashish to a friend in the United States was a thoughtless and fool-hardy action. It was the kind of "lark" which is not uncommon among young people, and reflects the current attitude of many thousands of our youth toward marijuana and similar drugs. In admitting he used poor judgment, the Defendant expresses remorse at having sent the hashish into this country. In fact, the Defendant has voluntarily offered to cooperate with representatives of the Drug Enforcement Administration by providing any information which might be of value to them. The Court is sensitive to the fact that this was a singular act of immaturity by an otherwise increasingly responsible and mature young man.

C. *Setting Aside the Defendant's Conviction*

█ The Defendant seeks to be placed on probation under 18 U.S.C. § 5010(a) so that he may later have his conviction set aside under 18 U.S.C. §

5021(b), the applicable provision of the Youth Corrections Act.[16] The purpose of § 5021 "is to relieve [a youthful offender] not only of the usual disabilities of a criminal conviction, but also to give him a second chance free of a record tained by such a conviction." Mestre Morera v. United States Immigration and Naturalization Serv., 462 F.2d 1030, 1032 (1st Cir. 1972).

The Court holds that the setting aside of a conviction pursuant to 18 U.S.C. § 5021(b) is a form of treatment under the Youth Corrections Act, and finds that the Defendant will benefit from being placed on probation and having the resultant opportunity to have his conviction set aside under that section.

█ As discussed above, it is essential that all of the sections of the Youth Corrections Act be read in light of the purposes of the Act and within the definitional framework established in 18 U.S.C. § 5006. The provision for setting aside an offender's conviction, when interpreted in that context, has a curative effect which facilitates the accomplishment of the correction of the antisocial tendencies of young offenders, and thus furthers the central goal of rehabilitation.[17] If a young offender starts his adult life with a criminal record, it is likely that he will consider his chances for a respectable and rewarding future to be minimal.[18] The stigma of a

---

16. 18 U.S.C. § 5021(b) provides: "Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect."

17. Although § 5021 does not provide for the sealing of the offender's records when his conviction is set aside, that section may be read as an expungement provision. The statute provides that if the court, in its discretion, unconditionally discharges the offender before the maximum period of probation originally imposed by the court has expired, the court will issue a certificate set-

ting the conviction aside. In order to effectuate the purposes of the Youth Corrections Act, the court, under its inherent powers as an Article III court having equitable jurisdiction may, in the appropriate situation, order the expungement and sealing of the offender's records. *See* Menard v. Saxbe, 498 F.2d 1017, 1023–1025 (D.C.Cir.1974); Doe v. Commander, Wheaton Police Dept., 329 A.2d 35 (Court of Appeals of Maryland, 1974); 46 A.L.R.3d 900–33 (1972). However, this is not an issue before the Court at this time.

18. Such an attitude would understandably develop, not only as a reaction to having a criminal record, but as a response to the serious consequences for the young offender of the adjudication process itself. "Curtailment of employment opportunity, quasi-crim-

felony conviction is permanent[19] and pervasive.[20] Such a burden might lead a young person to reason that he is already a "marked man", and thus making it more likely that he will be a recidivist. The setting aside of his conviction, on the other hand, enables the young offender to begin anew, and serves as an inducement to become a law-abiding citizen. Section 5021, therefore, is itself a form of rehabilitative treatment.

Moreover, the provision for the setting aside of the offender's conviction reflects the compassionate and sensitive orientation of the Youth Corrections Act. All of the Act's provisions are geared not to punish the youth offender, but rather to assist him to fulfill his promise of becoming a useful citizen and to "avoid the degenerative and needless transformation" of the offender into a habitual criminal. H.R. Rep. No. 2979, 81st Cong., 2d Sess. p. 1 (1950), 1950 U.S. Code Cong.Serv., p. 3983.

In the case now before the Court, the Defendant deserves a second chance. His background is solid, and he shows no indication of hardened criminal behavior. He has had time to consider the seriousness of the offense he committed, and the Court believes he is unlikely to commit another foolish mistake in the future. There is no reason for this Court or the Assistant United States Attorney to darken this Defendant's otherwise bright future by denying him the opportunity to begin his mature adult life with a record clean of his felony conviction.[21] Therefore, the Court finds that the Defendant will benefit from the treatment provided under the Youth Corrections Act. He will benefit from being placed on probation pursuant to § 5010(a), and from all the treatment incident thereto, most critical-

inal record, harm to personal reputation in the eyes of family and friends and public reinforcement of antisocial tendencies" are among the impediments to rehabilitation imposed upon the offender by formal adjudication. The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Juvenile Delinquency and Youth Crime (1967), p. 16.

19. The permanency of a criminal record works an especially harsh injustice in the case of a young offender. "The juvenile will wear the label longer, while he is likely to outgrow the conduct that brought him the badge; one who acquires the status of a deviant in his youth faces the prospect of lifelong stigmatization." *Id.*

20. The Court is aware of the literally thousands of discriminatory laws which apply to all persons convicted of crime at the city, county and federal levels, who cannot secure expungement of their "criminal" records. The Court recognizes the severe handicap that non-expungement imposes upon ex-offenders in their attempts to secure employment and to live useful and productive lives. *See* National Clearinghouse on Offender Employment Restrictions, ABA, Laws, Licenses and the Offender's Right to Work (1973). This Court believes strongly that all levels of government, and all segments of the criminal justice system, including judges, prosecutors, correctional officials, and probation and parole officers, must be committed to the goal of enactment and application of broad expungement provisions, and the repeal of state laws which deprive persons convicted of criminal offenses of civil rights or restrict the occupational licensing or other employment prerequisites which work so harshly against the ex-offender. *See* National Advisory Commission on Criminal Justice Standards and Goals, Corrections (1973), §§ 2.10, 16.17. If this goal is not actively pursued, our society is being hypocritical in saying that the 5% of our population who "get caught" have repaid their debt to society in full once punished and hopefully rehabilitated through the correctional process. Full restoration of all civil rights to an offender who has responded to treatment is absolutely essential if actual justice is to be realized.

21. There has been growing recognition that expungement provisions are essential to the fair administration of justice and to the rehabilitation of offenders. Pursuant to the recommendations of the National Commission on Uniform State Laws in its model statute, the Uniform Controlled Substances Act, 36 states have enacted expungement statutes with respect to drug offenders. *See also* National Advisory Commission on Criminal Justice Standards and Goals, Corrections (1973), §§ 16.17, 2.10. The reasons underlying the enactment of expungement provisions are particularly compelling as applied to offenders who have responded favorably to probationary treatment. *See* ABA Standards, Probation, (1970), § 4.3.

ly, the provisions of § 5021, regarding the setting aside of an offender's conviction. By being placed on probation under the Youth Corrections Act, the Defendant can, "by virtue of his own good conduct, be spared the lifelong burden of a criminal record." Tatum v. United States, 114 U.S.App.D.C. 49, 51, 310 F. 2d 854, 856 (1962).

## IV.  CONCLUSION

It is within the Court's discretion, pursuant to 18 U.S.C. § 3651, to modify the Defendant's probation, and to place him, as a young adult offender, on probation under the Youth Corrections Act. 18 U.S.C. §§ 4209, 5010(a); United States v. Bailey, 343 F.Supp. 76, 78 (W. D.Mo.1971).

The facts of this case, when examined in light of the rehabilitative purposes of the three statutes here involved, compel the Court to conclude that such a modification of probation would be in the best interest of justice, the public, and the Defendant. The Court's power to grant this relief is conferred not only by the statutory provisions, but derives also from the Court's inherent powers as an Article III court having equitable jurisdiction over the due administration of justice. Equity demands that the Court utilize the provisions of 18 U.S.C. § 5010(a) to carry out the Congressional mandate of the Youth Corrections Act. Thus, in granting the modification of probation, the Court is fulfilling its duty, as a court of equity, to serve the public interest and to see that justice is done.

Lastly, the Court could, in its discretion, terminate the Defendant's probation and set him free under no supervision or guidance. However, placing him on probation under the Youth Corrections Act will better serve the Defendant and society. Under the continued tutelage of the probation officer, the Defendant will receive assistance in laying the foundations for a productive future; and, without the burden of a criminal record, he will later be able to realize his potential as a valuable citizen in his community. A report to the Court from the Defendant's probation officer on January 21, 1975, fully corroborates this conclusion and supports the Court's action herein.

The Court shall enter this day an Order in accordance with this Opinion.