**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Glen Stewart FRYER, Defendant.**

**Crim. No. 75–8.**

United States District Court,
N. D. Ohio, W. D.

Oct. 31, 1975.

James D. Jensen, Asst. U. S. Atty., N. D. Ohio W. Div., for plaintiff.

Walter L. White, Lima, Ohio, for defendant.

OPINION AND ORDER

DON J. YOUNG, District Judge:

This cause came to be heard upon the motions of the defendant to withdraw

his plea of guilty pursuant to Rule 32(d), Fed.R.Cr.P. and to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255. Defendant pled guilty to four counts of violating 18 U.S.C. § 922 (a)(6) and § 924(a).[1] It is evident that if the Government would have had to prove its case against the defendant, it would have had to prove as an essential element of each offense that the defendant had been previously convicted of a felony. In September of 1971, in the Eastern District of California, the defendant pled guilty to a violation of 18 U.S.C. § 545, smuggling goods into the United States, and was sentenced to three years probation. It appeared from a review of the records of that conviction that the defendant had been sentenced as an adult, and therefore, did have a prior felony conviction as required by 18 U.S.C. App. § 1202(a) and as would have been necessary for the Government's case under § 922(a)(6) and § 924(a). Since the time of the defendant's plea in this Court, however, it has come to be known by defendant's attorney that the defendant had, in fact, been adjudged a young adult offender by the trial court in California pursuant to 18 U.S.C. § 4209. Therefore, when the defendant was unconditionally discharged from his probation prior to the expiration of the maximum period of probation theretofore fixed by the court, his conviction should have been set aside automatically pursuant to 18 U.S.C. § 5021(b).[2] The California court, recognizing this, modified its judgment and order of probation of minute order to indicate that probation was granted under the provisions of 18 U.S.C. § 5010(a) and that an order of discharge from probation and a certificate of vacation of conviction were filed *nunc pro tunc* to June 22, 1973, thereby extending the full benefits of the Youth Corrections Act to the defendant. The question presented to this Court in these motions then is clear: Does the defendant's California conviction which has now been set aside as of June 23, 1973 (and thus substantially before the present charges arose) constitute a prior conviction for the purposes of the charges in this Court?

1. 18 U.S.C. App. § 1202(a) reads in part:
"Section 1202(a) Any person who—
\* \* \* \* \*
"(1) has been convicted by a court of the United States or of a State or of a political subdivision thereof of a felony, . . . and who receives, possesses . . . after the date of the enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

18 U.S.C. § 922(a)(6) reads:
"(a) It shall be unlawful—
\* \* \* \* \*
"(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter [18 U.S.C. §§ 921–928]."

18 U.S.C. § 924(a) reads:
"Penalties—(a) Whoever violates any provisions of this chapter [USCA §§ 921–928 of this title] or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter [18 USCS §§ 921–928] to be kept in the records of a person licensed under this chapter [18 USCS §§ 921–928], or in applying for any license or exemption or relief from disability under the provisions of this chapter [18 USCS §§ 921–928], shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine."

2. 18 U.S.C. § 5021(b) reads:
"(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect."

The issue presented appears to be one of first impression, the Court being unable to find a decision which has considered the exact problem. It will thus be necessary for the Court to interpret and construe the applicable statutes. The Court is aware that in dealing with problems of interpretation and application of federal statutes, it has no power to change deliberate choices of legislative policy. *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 82 S.Ct. 1328, 8 L. Ed.2d 440 (1962). Where the statutory language and the legislative history clearly indicate the purpose of Congress, that purpose must be upheld. *Hudson Distributors v. Eli Lilly Co.,* 377 U.S. 386, 84 S.Ct. 1273, 12 L.Ed.2d 394 (1964). Of course, in giving construction to more than one statute, the Court should, as far as possible, construe them in harmony with each other so as to avoid conflict and to give full force and effect to each. *R. V. McGinnis Theatre and Pay T. V. v. Video Independent Theatre Inc.,* 262 F.Supp. 607 (D.Okl.), *aff'd,* 386 F.2d 592 (10th Cir. 1967), *cert. denied* 390 U.S. 1014, 88 S.Ct. 1265, 20 L.Ed.2d 163 (1968).

The legislative history of 18 U.S.C. App. § 1202(a) was thoroughly discussed by the Sixth Circuit Court of Appeals in *Stevens v. United States,* 440 F.2d 144 (6th Cir. 1971). The Sixth Circuit, while concerned with problems other than those facing this Court, appended to its opinion the entire legislative history of § 1202(a) as it appeared in the Congressional Record, 114 Cong. Rec. 13,868 (1968). § 1202(a) was an amendment to the Omnibus Crime Control and Safe Streets Act of 1968. It thus received no committee study. There was, however, substantial discussion of the amendment on the floor of the Senate. It is evident from that debate, and especially from the comments of Senator Long, the amendment's sponsor, that the only situation envisioned in which a convicted felon would be permitted to possess firearms subsequent to his conviction is one where he was granted a presidential or gubernatorial pardon and such pardon expressly conferred the right to bear arms. Senator Long stated:

> It might be well to analyze, for a moment, the logic involved. When a man has been convicted of a felony, unless —as this bill sets forth—he has been expressly pardoned by the President and the pardon states that the person is to be permitted to possess firearms in the future, that man would have no right to possess firearms. He would be punished criminally if he is found in possession of them. *Stevens, supra,* at 147.

Later in the debate Senator Long added:

> In large part, Title VII is based on the legal theory that every dog is entitled to one bite. . . . So, under Title VII every citizen could possess a gun until the commission of his first felony. Upon his conviction, however, Title VII would deny (him) . . . the right to possess a firearm in the future except where he has been pardoned by the President or a State Governor and has been expressly authorized by his pardon to possess a firearm. *Id.* at 161.

It is clear from Senator Long's comments that the bill was aimed at those who "have demonstrated that they cannot be trusted to possess a firearm— those whose prior acts—mostly voluntary—have placed them outside of our society." Id. at 162. Finally, in support of the bill, the Senator from Louisiana argued that when a man is convicted of a felony, he can be denied certain rights that he would otherwise be entitled to possess including the right to bear firearms. *Id.* at 163.

It is argued by the Government that if Congress had intended to exclude from the application of this section those young adults convicted of a felony and sentenced under the Youth Corrections Act, whose convictions were ultimately set aside, it would have done so expressly. The fact that only those granted a very specific presidential or gubernatorial pardon are excluded

means that all other convicted felons are included. *Expressio unius est exclusio alterius.*

■ This Court is of the opinion that the Government's argument has merit if the provisions of § 5021 are in the nature of a presidential pardon. A pardon is an exceptional and specific act of grace usually granted by executive power. It "remits punishment and removes some disabilities but does not erase the legal event determinative of the offender's status *qua* offender, i.e., the conviction itself." A. R. Grough, "Expungement of Records," 1966 Wash.U.L.Q. 147 (1966). Case law supports this definition. *See, Morera v. United States Immigration & Naturalization Service,* 462 F.2d 1030 (1st Cir. 1972); *Tatum v. United States,* 114 U.S.App.D.C. 49, 310 F.2d 854 (1962). The Supreme Court of the United States in *Carlesi v. New York,* 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914) held that the fact that a convicted felon had been granted a presidential pardon did not preclude the State of New York from considering the prior conviction in sentencing the defendant under a New York second offense statute. By way of dicta, the Supreme Court also stated that a federal court could consider a pardoned crime in sentencing someone on a subsequent offense. *Carlesi, supra* at 59, 34 S.Ct. 576. It seems clear then that if the rights granted a youthful offender under § 5021 are no greater than those bestowed on one who receives a pardon, he would be considered to have a prior felony conviction for the purposes of 18 U.S.C. § 1202(a).

What, however, if § 5021 is construed as an expungement statute? Expungement is a legislative provision, as opposed to executive, for the "eradication of a record of conviction or adjudication upon the fulfillment of prescribed conditions . . . . It is not simply the lifting of disabilities attendant upon conviction and a restoration of civil rights, though this is a significant part of its effect. It is rather a redefinition of status, a process of erasing the legal event of conviction or adjudication and thereby restoring to the regenerative offender his *status quo ante.*" A. R. Grough, "Expungement of Adjudication Records," *supra* at 149. If the effect of § 5021 is to eliminate the youth's status as a convicted felon and to restore to him the position he held before the commission of the crime, then it seems clear that he would not fall within the ambit of § 1202(a) since the prior conviction and all its pendent liabilities have been removed. To give such a statute full force and effect, the event expunged must be treated as if it never occurred.

The authorities which have treated the effect of § 5021 on the youthful offender's record are divided on the issue of whether it is, in fact, an expungement statute. The *Morera* case cited above concerned an alien whom the Government was trying to deport on the basis of a prior felony conviction which had been set aside under § 5021. The court there found that the clear purpose for the automatic setting aside of the conviction is to relieve the youthful offender not only of the usual disabilities of a criminal conviction but also to give him a second chance free of a record tainted by such convictions. *Morera, supra* at 1032. The Morera Court was not willing to conclude that Congress, without explicitly so stating, would intend § 5021 to provide for the setting aside of a conviction for some purposes but not for others. *Id.*

> Section 5021 clearly contemplates more than a "technical erasure;" it expresses a Congressional concern, . . . that juvenile offenders be afforded an opportunity to atone for their youthful indiscretions . . . Pardon and leniency at most restore to an offender his civil rights; neither is as clearly directed as the Youth Correction Act toward giving him a second chance, free from all taint of a conviction. *Id.* at 1032.

In *Tatum v. United States, supra,* the District of Columbia Circuit Court of Appeals stated:

> This feature of the Youth Corrections Act [§ 5021] gives it an operative ef-

fect, which presents a marked and important difference from a criminal conviction which can be relieved only by a presidential pardon and then only to a limited extent.

As a footnote to the above quote the court stated that the provisions of the Act "appears to provide greater relief than would a presidential pardon of the same offense. The former acts to expunge the conviction and the record while the latter 'releases the offender from all disabilities imposed by the offense, and restores to him all his civil rights.'" *Tatum, supra* at 856. *United States v. Glasgow*, 389 F.Supp. 217 (D.D.C.1975) is similar:

> . . . although § 5021 does not provide for the sealing of the offender's records when his conviction is set aside, that section may be read as an expungement provision. *Glasgow, supra* at 224, n. 17.

*Fite v. Retail Credit Co.*, 386 F.Supp. 1045 (D.Mont.1975), however, takes quite a different view of Section 5021. In *Fite*, the defendant had revealed to the plaintiff's employer the fact that the plaintiff had been convicted of a felony as a young adult and that the conviction had been set aside under the provisions of the Youth Corrections Act. Plaintiff was subsequently fired. The court found no liability against the defendant credit company. It was held that court records are public and the Youth Corrections Act does not prohibit disclosure of them. The Fite Court believed that sentencing under the Youth Corrections Act did not change the fact that a guilty plea was an admission of wrongdoing.

> It is sheer fiction to say that the conviction is "wiped out" or "expunged." What the statute does is reward the convict for good behavior during probation by releasing certain penalties and disabilities. *Fite, supra* at 1047 citing *Garcia-Gonzales v. Immigration and Naturalization Service*, 344 F.2d 804 (9th Cir. 1965).

In the law review article cited above, the author takes a somewhat similar position. While the author is willing to concede that the Youth Corrections Act provides a scope of alleviation somewhat broader than a presidential pardon, he believes that it is definitely not a statute of expungement and does not restore the offender's former status among his fellow men. Grough, "Expungement of Adjudication Records," *supra* at 152; *See also* 1957 N.J.Ops.Atty.Gen. 143.

The legislative history of Section 5021 is of some value in deciding what scope and effect should be given to the section. Again, however, it is not so definitive as to remove all doubt. The committee reports are silent as to § 5021. It was, however, mentioned by several of the witnesses at the Senate subcommittee hearings on the Youth Corrections Act. Judge Bolitha J. Laws testified that young adults who fulfilled the requirements of the Youth Corrections Act would have their "records cleared and their civil rights restored." Hearings on S. 1114 and S. 2609 before the Subcomm. of the Sen. Comm. of the Judiciary, 81st Cong. 1st Sess. at 13 (1949): "When the division turns them out ahead of their maximum sentence, the law blots out their sentence and lets them go without any stigma on their life . . . ." *Id.* at 19.

> There is one feature of this bill which is very salutary and that is that if the youth offender is reclaimed in the opinion of the board and they decide to release him, they can strike out the sentence imposed upon him and completely set aside his conviction so that he will not have a criminal record staring him in the face. *Id.* at 45. (Test of Judge John J. Parker)

Judge Orie L. Phillips had a somewhat different concept of Section 5021:

> Well, of course, the Act does provide for the wiping out of the conviction if the youth is discharged, rehabilitated and behaves himself after his period of supervision. The purpose of that is to help him get a job and keep him from being turned down by a prospective employer because of the fact that

he has had a conviction. It does not entirely remove the difficulty but he can say to his prospective employer— "I have gone through this thing. They think I am rehabilitated and have given me this clearance and I think I am rehabilitated and think I can make good." *Id.* at 69.

The above quotation was given in response to a question by Senator Kilgore who expressed the fear of at least two federal judges that the Act gave to the Board of Parole the right to set aside the solemn adjudication of the courts and allowed it to exercise the pardoning power formerly reserved to the President. *Id.*

While there are no cases which the Court could find dealing exactly with the problem before it in these motions, there are several cases which concern related problems and thus are helpful to the Court in its effort to reach a just and proper decision.

There seems to be little, if any, dispute over the fact that even though the trial court elects to proceed under the Youth Corrections Act, the conviction of the youth, at least before it is set aside, is a final conviction for purposes such as deportation. *See Hernandez-Valensuela v. Rosenberg*, 304 F.2d 639 (9th Cir. 1962). Similarly, in *People v. Loomis*, 231 Cal.App.2d 594, 42 Cal.Rptr. 124 (1965), a California appellate court found that a youth previously convicted of a felony and sentenced under the provisions of the Youth Corrections Act did have a prior conviction as required by § 12021 of the California Penal Code (possession of a gun by one previously convicted of a felony). In *Loomis*, the second offense occurred prior to the setting aside of the first conviction under § 5021, though the formal charges and the trial occurred subsequently. The court held that the date of the possession of the weapon was the crucial date. Since the defendant had possessed the gun before the federal court had entered its order vacating the prior conviction, the court was unwilling to say that he could

not be convicted of the California offense. *Loomis, supra* at 125.

*United States v. Kelly*, 519 F.2d 794 (8th Cir. 1975) presents a somewhat different variation of the theme. The defendant there was charged with violating 18 U.S.C. App. § 1202(a). His prior conviction was under the laws of the State of Minnesota and it had been expunged pursuant to a state statute. The Kelly Court held that since the defendant had not received a pardon for his first offense expressly permitting him to carry a firearm, he fell within the ambit of § 1202(a) despite his state expungement. The court stated that if Congress had meant to recognize means other than pardon by which states might expunge convictions, it would have done so expressly. *Id.* at 796. This holding is in keeping with other cases which have held that state legislatures are unable to release their citizens from penalties and disabilities imposed under federal law. *See Garcia-Gonzales v. Immigration & Naturalization Service*, 344 F.2d 804 (9th Cir. 1965). Congress, of course, may release citizens of such penalties and disabilities. *Morera, supra,* in holding that a conviction set aside under § 5021 could not be used against someone for the purposes of deporting him, was, in effect, holding that certain penalties and disabilities had been removed by the operation of § 5021.

The question of whether conviction as a young adult offender constitutes a prior conviction has come up in one other context. *United States v. Wilson*, 404 F.2d 531 (2d Cir. 1968) and *United States v. Chappell*, 292 F.Supp. 494 (C. D.Cal.1968) both concerned the question of whether a prior narcotics conviction punished by sentencing under the Youth Corrections Act constituted a first offense for purposes of establishing second offender status, notwithstanding the absence of the Youth Corrections Act from those statutes listed in the former 26 U.S.C. § 7237(c)(1) (repealed in 1970. A comparable statute now is 21 U.S.C. § 962) which contained

a list of penalties used to identify a second or subsequent offender. *See,* Annot., 11 A.L.R. Red. 499 (1972). The *Wilson* case held that the prior conviction did constitute a first offense while the Chappell Court held contra. Unfortunately, neither case involved the situation where the first offense had been set aside. They were rather concerned only with the absence of the Youth Corrections Act from the second offender statute.

■ After reviewing the above cases and examining the legislative history of the statutes involved, this Court is of the opinion that once a conviction has been set aside pursuant to § 5021, it is expunged from the defendant's record for all purposes and may not later be used to convict someone of violating a statute which requires as an essential element of the offense a prior felony conviction. The underlying purpose of the entire Youth Corrections Act is one of rehabilitation. The act departs from the punitive idea of dealing with criminals. It is based on the Borstal system of the English and is aimed at the physical, physiological and social characteristics of youth. It is predicated on the concept that criminal youths require special treatment because of the number and kinds of offenses they commit and because of the promise they hold out for success through correctional treatment. Sen.Rpt. No. 1180, 81st Cong., 2d Ses. (1950); H.R.Rpt. No. 2979, 81st Cong., 2d Ses. (1950).

> The underlying theory of the bill is to substitute for retributive punishment methods of training and treatment designed to correct and prevent antisocial tendencies. It departs from the mere punitive idea of dealing with criminals and looks primarily to the objective idea of rehabilitation. *Id.*

The act was designed to provide a better method for treating young offenders convicted in federal courts, to rehabilitate them and restore normal behavior patterns. *Dorszynski v. United States,* 418 U.S. 424, 433, 94 S.Ct. 3042, 41 L. Ed.2d 855 (1974).

The meaning of a statute is to be looked for not in any single section but in all parts together and in their relation to the end in view. *Panama Refining Co. v. Ryan,* 293 U.S. 388, 439, 55 S.Ct. 241, 79 L.Ed. 446 (1935) (Cardozo dissenting). Section 5021 must be read in such a way as to further the purpose of the entire statute. It must be read not only so as to relieve the youthful offender of the usual disabilities of a criminal conviction, but also so as to give him a second chance free from any record of the conviction. *United States v. Glasgow, supra* at 224.

> The provision for setting aside an offender's conviction, when interpreted in that context, has a curative effect which facilitates the accomplishment of the correction of antisocial tendencies of young offenders, and thus furthers the central goal of rehabilitation. . . . The setting aside of his conviction, on the other hand, enables the young offender to begin anew, and serves as an inducement to become a law-abiding citizen. Section 5021, therefore, is itself a form of rehabilitative treatment. *Id.* at 224–25.

Not to allow to one whose conviction has been set aside under the provisions of the Youth Corrections Act the same rights as other citizens never convicted is to thwart and rebuff the underlying purposes of the Act. When the House and Senate Committees filed their reports with Congress, they were most concerned with the feasibility of the plan, with whether or not it would work. *See,* U.S.Code and Cong.Service, 81st Cong., 2d ses. (1950) at p. 3987. If this Court holds that a young adult whose conviction has been set aside does not have the same rights to possess firearms as other citizens, it will have answered Congress's question in the negative. Such a ruling would, in effect, state that the youth has not been rehabilitated, that he cannot be trusted and that he does not deserve a second chance. The Court does not believe Congress intended such a result when it passed its firearms legislation. It certainly did not intend

838

that result when it passed the Youth Corrections Act. It is this Court's opinion that 18 U.S.C. App. § 1202(a) was not designed to meet a situation such as this. The two statutes can be given their fullest effect and most efficiently harmonized by the present holding. *People v. Loomis* and *United States v. Kelly, supra,* the two cases most closely resembling the factual situation presented in the case at bar, are clearly distinguishable. In *Loomis,* at the time of the second offense, the defendant's conviction had not been set aside. In the present case, it has been. The Court does not believe that Mr. Fryer should suffer as a result of clerical errors and administrative bungling following his California conviction. The fact of that offense being set aside *nunc pro tunc* is of no consequence. Actually, it is that rather rare occurrence, a technically proper use of an order *nunc pro tunc,* to correct a mere clerical error. The *Kelly* case appears to be one in which the court relied upon the supremacy of federal law. It was of the opinion that it was not compelled to give effect to state law. With this holding, this Court agrees. Here, however, federal law is involved. As was said in *Morera, supra* at page 1032:

> Regardless of how compelling this argument may be when the expunction is of a state conviction under an unusual state procedure . . . we are unpersuaded when it is the Youth Corrections Act that is involved.

■ This Court is also unpersuaded by the Government's argument that even if it is held that the § 1202(a) conviction must be set aside, the same is not true of the §§ 922(a)(6) and 924(a) convictions. The essence of these charges is knowingly and falsely giving a statement intending to deceive a firearms dealer. To prove this, the Government would have had to show that the defendant had been previously convicted since it alleges he falsely told the dealer that he has not. It does not matter that the defendant actually believed that he

was a convicted felon when he told the firearms dealer he was not. The fact is that legally he was not a convicted felon. One cannot know something that is not so. What he told the firearms dealer was true whether he believed it to be or not. The defendant's convictions will be set aside.

Therefore, for the reasons stated herein and for good cause appearing, it is

Ordered that the motion of the defendant to vacate and set aside his sentence should be, and hereby is, granted, and it is

Further ordered that the defendant's conviction should be set aside and his sentence vacated, and it is

Further ordered that the charges against the defendant be dismissed and the defendant discharged, and it is

Further ordered that the motion of the defendant to withdraw his guilty plea should be, and hereby is, dismissed as moot.

It is so ordered.